No. 41,476

Irma Natanson, *Appellant*, v. John R. Kline and St. Francis Hospital and School of Nursing, Inc., *Appellees*.

(354 P. 2d 670)

Opinion denying a rehearing filed August 5, 1960. (For original opinion reversing the judgment of the trial court with directions to grant a new trial, see 186 Kan. 393, 350 P. 2d 1093.)

*Wayne Coulson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell* and *Willard B. Thompson*, all of Wichita, for the appellant. *Hugo T. Wedell*, of Wichita, of counsel.

*William Tinker, Getto McDonald, Arthur W. Skaer, Hugh P. Quinn, William Porter, Alvin D. Herrington, Darrell D. Kellogg, Richard T. Foster, W. D. Jochems, J. Wirth Sargent, Emmett A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Vincent L. Bogart, Cecil E. Merkle, John W. Brimer* and *Harry L. Hobson*, all of Wichita, for the appellee, St. Francis Hospital and School of Nursing, Inc.

*W. A. Kahrs, Robert H. Nelson* and *H. W. Fanning*, all of Wichita, for the appellee, John R. Kline.

The opinion of the court was delivered by

SCHROEDER, J.: Within the time allotted after the decision of the court herein was announced the appellees filed motions for rehearing. Thereafter, pursuant to request, leave was granted the Kansas Medical Society on May 12, 1960, to file its brief *amicus curiae* in support of the appellees' motions for rehearing. Finding nothing, upon consideration of the motions for rehearing and the brief of *amicus curiae* in support thereof, which warrants a reconsideration of the case, the motions for rehearing are denied.

Recognizing, however, that this is a case of first impression in Kansas and one establishing judicial precedence of the highest importance to the medical profession, an attempt will be made to clarify Syllabus ¶ 4 and the corresponding portion of the opinion concerning which counsel are apprehensive.

Perhaps in preoccupation over the *legal* obligation of a physician to his patient, the court has not adequately emphasized procedural aspects of the case, or reiterated fundamental doctrine in the law of negligence sufficiently to completely avoid efforts to misconstrue the opinion.

It is charged that the court has confused a malpractice suit, where negligence is an essential element, with an assault and battery case, where negligence is not an essential element, thereby giving rise to a hybrid action which is neither one of negligence nor one of assault and battery, but may be a combination of the two.

It is argued the only way the court's opinion can be justified is to say that the duty of a physician to disclose to his patient the risks and hazards of a proposed form of treatment is an absolute one, and the matter is not to be judged by such disclosures as a reasonable medical practitioner would make under the same or similar circumstances.

In support of the argument, that the court has imposed an absolute duty upon the physician, the following paragraph is isolated from context:

"On retrial of this case the first issue for the jury to determine should be whether the administration of cobalt irradiation treatment was given with the informed consent of the patient, and if it was not, the physician who failed in his legal obligation is guilty of malpractice no matter how skillfully the treatment may have been administered, and the jury should determine the damages

arising from the cobalt irradiation treatment. If the jury should find an informed consent was given by the patient for such treatment, the jury should next determine whether proper skill was used in administering the treatment." (*Natanson v. Kline*, 186 Kan. 393, 411, 350 P. 2d 1093.)

A casual reading of this paragraph in context would indicate that reference is there being made to the *order* in which the jury is to consider the issues presented on retrial of the case, and not to an enumeration of the various elements which must be established by the evidence to prove each of the issues stated.

The gravamen of the plaintiff's complaint was malpractice or the failure of the defendants to properly perform the duties which devolved upon them—a failure which resulted in the alleged injuries to the plaintiff. Thus it was incumbent upon the plaintiff to prove and establish (1) that the defendants failed to perform their duty; and (2) that the plaintiff's injuries were the direct and proximate result of such failure.

The petition alleged that the injuries were "a direct and proximate result of the defendants' negligence and carelessness" and then set forth eight specific grounds of negligence, including:

"(g) He [Dr. Kline] failed to warn plaintiff that the course of treatment which he undertook to administer involved great risk of bodily injury or death."

The answers of both defendants denied generally the allegations of asserted negligence, and in addition thereto, affirmatively pleaded that the plaintiff "assumed the risk and hazard of the treatment." Thus, at the trial the defendants were fully aware that *the informed consent of the patient to the hazards of the treatment was an issue of fact in the case.* This is true because as a defense assumption of risk is applicable only where the plaintiff is equally competent with the defendant to judge concerning the risks and hazards. (See, *Taylor v. Hostetler*, 186 Kan. 788, 352 P. 2d 1042, and cases cited therein.) These affirmative allegations of the defendants presupposed an informed consent by the patient with full knowledge of the risks and hazards of the treatment.

The court held after reviewing the record presented on this appeal that a physician violates his duty to his patient and *subjects himself to liability for malpractice,* where no immediate emergency exists *and upon facts and circumstances particularly set forth in the opinion,* if he makes *no disclosure* of significant facts within his knowledge which are necessary to form the basis of an intelligent consent by the patient to the proposed form of treatment (Syllabus ¶ 4).

In other words, on the facts and circumstances presented by the record the appellant was entitled to some explanation concerning the risks and hazards inherent in the administration of cobalt irradiation treatment which Dr. Kline proposed to administer to her. For this treatment she was Dr. Kline's patient and not the patient of Dr. Crumpacker by whom she was referred to Dr. Kline.

The appellant was entitled to a reasonable disclosure by Dr. Kline so that she could intelligently decide whether to take the cobalt irradiation treatment and assume the risks inherent therein, or in the alternative to decline this form of precautionary treatment and take a chance that the cancerous condition in her left breast had not spread beyond the lesion itself which had been removed by surgery. There was no emergency calling for immediate attention. The appellant had recovered from the surgery. In addition to the evidence related in the opinion her husband testified:

"Q. Now, directing your attention to approximately the 5th or 6th day of June, 1955, I would like to have you describe for us the general apparent condition of the health of Mrs. Natanson?

"A. Mrs. Natanson at that particular time was very, very well. She had gone through the two operations and had made a very, very fine recovery. She was able to use her arm because of the therapy; she had almost the complete use of the left arm again. The breast had healed fully. There were actually no scars—just the one large scar but there was a thickness there. We were living a very normal life after the big scare we had.

"Q. Now, directing your attention to the first week of June, 1955, I will ask you whether or not Mrs. Natanson ever recovered to the point where she was able to do her own housework?

"A. Yes, she had."

But contrary to the legal obligation imposed upon a physician to make a reasonable disclosure to his patient of the inherent risks and hazards of a proposed form of treatment, Dr. Kline gave the appellant no explanation whatever. He made no disclosures. He was silent. On this state of the record Dr. Kline failed in his legal duty to make a reasonable disclosure to the appellant who was his patient *as a matter of law.*

Conceivably, in a given case as indicated in the opinion, no disclosures to a patient may be justified where such practice, under given facts and circumstances, is established by expert testimony to be in accordance with that of a reasonable medical practitioner under the same or similar circumstances. But on the state of the record here presented the appellant was not required to produce expert medical testimony to show that the failure of Dr. Kline to

give any explanation or make any disclosures was contrary to accepted medical practice. To hold otherwise would be a failure of the court to perform its solemn duty.

Whether or not a physician has advised his patient of the inherent risks and hazards in a proposed form of treatment is a *question of fact* concerning which lay witnesses are competent to testify, and the establishment of such fact is not dependent upon expert medical testimony. It is only when the facts concerning the actual disclosures made to the patient are ascertained, or ascertainable by the trier of the facts, that the expert testimony of medical witnesses is required to establish whether such disclosures are in accordance with those which a reasonable medical practitioner would make under the same or similar circumstances.

The question then remains whether such failure on the part of Dr. Kline to make a reasonable disclosure to the appellant was a proximate cause of her injury. As indicated in the opinion the mere fact that Dr. Kline was silent does not compel a verdict for the appellant. It was said:

". . . Under the rule heretofore stated, where the patient fully appreciates the danger involved, the failure of a physician in his duty to make a reasonable disclosure to the patient would have no causal relation to the injury. In such event the consent of the patient to the proposed treatment is an informed consent. The burden of proof rests throughout the trial of the case upon the patient who seeks to recover in a malpractice action for her injury." (*Natanson v. Kline*, supra, p. 410.)

Negligence is an essential element of malpractice, and the foregoing statement recognizes that a causal relation must be established by the patient, between the negligent act of the physician and the injury of the patient, to sustain the burden of proof where damages are sought in a malpractice action for injury. Prior to a discussion of the manner in which the court instructed the jury it was said in the opinion:

". . . At best it may be said, upon all the facts and circumstances presented by the record, there was evidence from which a jury could find that the proximate cause of the appellant's injury was the negligence of the defendants. On the other hand a jury, *properly instructed*, would be justified in finding for the appellees." (*Natanson v. Kline*, supra, p. 398.)

After making the foregoing statement in the opinion, discussion was directed to the instructions of the court without further specific attention to the issue of proximate cause. If, of course, the appellant would have taken the cobalt irradiation treatments even though Dr. Kline had warned her that the treatments he undertook to administer

involved great risk of bodily injury or death, it could not be said that the failure of Dr. Kline to so inform the appellant was the proximate cause of her injury. While the appellant did not directly testify that she would have refused to take the proposed cobalt irradiation treatments had she been properly informed, we think the evidence presented by the record *taken as a whole* is sufficient and would authorize a jury to infer that had she been properly informed, the appellant would not have taken the cobalt irradiation treatments.

Two days after the decision of this court was announced, the Supreme Court of Missouri handed down its opinion in *Mitchell v. Robinson*, 334 S. W. 2d 11, on April 11, 1960, wherein the Missouri court reached the same conclusion as this court on the duty of a physician to inform his patient of the hazards of treatment. There the patient had a rather severe emotional illness but was not mentally incompetent. The treatment prescribed was "combined electroshock and insulin subcoma therapy." A sharp conflict developed in the testimony as to whether the patient was informed of the risks of the treatment. Serious hazards incident to shock treatment were admitted, to-wit: fractured bones, serious paralysis of limbs, irreversible coma and even death, and further that there were no completely reliable or successful precautions. The patient as a result of treatment went into convulsions which caused the fracture of several vertebrae and sued the physicians in a malpractice action on the ground that he was not informed of the risks inherent in the treatment. The "essentially meritorious problem" before the court was whether upon the record there was any evidence to support the jury's finding of negligence. In the opinion the court said:

"In the particular circumstances of this record, considering the nature of Mitchell's illness and this rather new and radical procedure with its rather high incidence of serious and permanent injuries not connected with the illness, the doctors owed their patient in possession of his faculties the duty to inform him generally of the possible serious collateral hazards; and in the detailed circumstances there was a submissible fact issue of whether the doctors were negligent in failing to inform him of the dangers of shock therapy." (p. 19.)

As always, an effort is made by the court to present an opinion in logical sequence, so that consideration of subsequent issues is dependent upon the disposition of issues previously determined, and if opinions are analyzed in this manner misinterpretations will be minimized.

PARKER, C. J., and PRICE, J., are of the opinion the judgment of the trial court should be affirmed, and therefore dissent.