(609 P.2d 198)

No. 50,480

EUGENE CROWLEY, *Appellant,* v. DR. JAMES H. O'NEIL, *Appellee.*

Petition for review denied June 20, 1980.

Opinion filed March 28, 1980.

*J. R. Russell,* of J. R. Russell, Chartered, of Kansas City, for the appellant.

*D. Gary Hunter,* of Williamson, Cubbison, Hardy & Hunter, of Kansas City, for the appellee.

Before SWINEHART, P.J., REES and SPENCER, JJ.

SWINEHART, J.: Plaintiff Eugene Crowley brought a medical malpractice action against defendant James H. O'Neil. After a trial in Wyandotte District Court, the jury returned a verdict in favor of the defendant.

The issues on appeal are: (1) whether the trial court erred by instructing the jury according to PIK Civ. 2d 15.10 (1977) which requires that on questions of a medical or scientific nature concerning the standard of care of a physician, the jury may only find the requisite standard of care through the evidence of expert witnesses; and (2) whether the use of the word "accident" by a surgeon in medical records, completed after surgery has been performed, establishes a prima facie case of negligence on the part of the physician.

In June of 1974, the plaintiff was admitted to St. Mary's Hospital in Kansas City, Missouri, complaining of severe stomach pains. After a series of medical tests it was determined that he had a nonfunctioning diseased gallbladder. On June 20, the defendant, Dr. O'Neil, performed a cholecystectomy on Mr. Crowley, *i.e.,* he excised the diseased gallbladder which was described as extra thick. Dr. O'Neil testified that dissection of the gallbladder was difficult and the cystic duct which had to be severed during the surgery was not readily discernible. During the surgical procedure, the common duct, which was abnormally small, was inadvertently divided. Dr. O'Neil repaired the common duct with end-to-end anastomosis and a polyetheylene catheter was inserted proximal to the anastomosis close to the site of the splint.

As a result of this division of the common bile duct, the plaintiff was subjected to extended hospital care on several occasions, additional surgery, and other damages for the time he was away from his employment. Specifically, in December, 1974, the plaintiff was again admitted to St. Mary's Hospital with abdominal pain. Since Dr. O'Neil was retiring from his medical practice in January of 1975, plaintiff was referred to Dr. Joseph Cochrane. In March of 1975, the plaintiff was referred to Dr. Arthur E. Prevedel who performed common duct surgery on the plaintiff in Denver, Colorado.

At trial the plaintiff offered no expert medical testimony that Dr. O'Neil had not met the requisite standard of care of a surgeon while performing the cholecystectomy. In fact, his only medical witness was Dr. O'Neil. Plaintiff also introduced medical records

compiled by Dr. O'Neil stating that he had "accidentally" cut the bile duct.

Dr. Cochrane appeared as a defense witness and opined that Dr. O'Neil had not been guilty of any professional negligence while performing the gallbladder surgery on the plaintiff.

Among its instructions, the trial court included PIK Civ. 2d 15.10 (1977):

"In determining whether a physician used the learning, skill and conduct required of him, you are not permitted to arbitrarily set a standard of your own or determine this question from your personal knowledge. On questions of medical or scientific nature concerning the standard of care of a physician, only those qualified as experts are permitted to testify. The standard of care is established by members of the same profession in the same or similar communities under like circumstances. It follows, therefore, that the only way you may properly find that standard is through evidence presented by physicians called as expert witnesses."

The jury returned a verdict in favor of the defendant on July 11, 1978, and the plaintiff appeals.

The plaintiff states three separate issues in his brief on appeal. (1) When a treating physician enters written memos on his patient's record that he has "accidentally" done something to his patient, is this prima facie evidence of negligence on the part of the physician? (2) When a treating physician records that he has "accidentally" damaged his patient in the course of the care and treatment, does the patient-plaintiff need an expert medical witness to establish this action was less than the medical standard of care? (3) Did the trial court commit error in giving the PIK Civ. 2d 15.10 (1977) instruction in light of all the evidence before the court and jury? However, plaintiff's basic contention is that the defendant, in effect, "admitted" that he negligently severed the common bile duct while performing the cholecystectomy on the plaintiff. This alleged "admission" of negligence is based upon an entry made by the defendant in at least three of the plaintiff's medical records that the dissection of the common bile duct was "accidental." Plaintiff, therefore, argues that it was not incumbent upon him to introduce expert testimony to establish the requisite standard of care owed by a physician to a patient.

We first consider whether the trial court improperly instructed the jury pursuant to PIK Civ. 2d 15.10 (1977).

The long standing rules regarding medical malpractice in this state are well known. A physician has a duty to possess and exercise that reasonable degree of learning and skill which is

ordinarily possessed by members of his profession and of his school of medicine in the community in which he practices or in similar communities. *Webb v. Lungstrum,* 223 Kan. 487, 575 P.2d 22 (1978); *Chandler v. Neosho Memorial Hospital,* 223 Kan. 1, 3, 574 P.2d 136 (1977). The physician also has the duty to exercise such learning and skill with ordinary care and diligence. *Goheen v. Graber,* 181 Kan. 107, 309 P.2d 636 (1957). See also PIK Civ. 2d 15.10 (1977) and cases cited therein.

A physician or surgeon is presumed to have carefully and skillfully treated or operated upon a patient. Moreover, there can be no presumption of negligence from the mere fact of an injury or adverse result. *Webb v. Lungstrum,* 223 Kan. at 489; *Tatro v. Lueken,* 212 Kan. 606, 611, 512 P.2d 529 (1973); *Natanson v. Kline,* 186 Kan. 393, 350 P.2d 1093, *clarified and rehearing denied* 187 Kan. 186, 354 P.2d 670 (1960).

Of course, a different rule would apply in res ipsa loquitur cases, but there has been no contention regarding res ipsa loquitur in this action. In fact, the plaintiff has specifically described the negligent act he believes warrants a finding of malpractice, *i.e.,* the severance of the common bile duct.

There is no dispute between these litigants as to the above cited rules. The main disagreement surrounds the role that expert testimony plays in a medical malpractice case. Expert testimony is ordinarily required to establish negligence or a lack of reasonable care on the part of a physician in his performance of surgical procedures and in the care and treatment of his patients. *Webb v. Lungstrum,* 223 Kan. at 490; *Voss v. Bridwell,* 188 Kan. 643, 364 P.2d 955 (1961); see PIK Civ. 2d 15.10 (1977) and cases cited therein.

"However, this rule does not give the members of the medical profession a monopoly on common sense, and the rule is limited to those matters clearly within the domain of medical science. When, in a given case, the diagnosis, treatment or care of a patient brings such bad results that lack of reasonable care would be apparent, and using the common everyday knowledge of persons generally, such facts may be testified to by persons other than physicians. (*Goheen v. Graber,* 181 Kan. 107, 112, 309 P.2d 636 [1957]). This is referred to as the common knowledge exception." *Webb v. Lungstrum,* 223 Kan. at 490.

Accord, *Funke v. Fieldman,* 212 Kan. 524, 512 P.2d 539 (1973); *Tatro v. Lueken,* 212 Kan. 606. For example, lack of reasonable care was established by lay testimony, and such testimony was sufficient to establish a prima facie case of negligence in *Bernsden*

*v. Johnson,* 174 Kan. 230, 255 P.2d 1033 (1953) (a breathing tube was lodged in plaintiff's throat), and *Rule v. Cheeseman, Executrix,* 181 Kan. 957, 317 P.2d 472 (1957) (gauze was left in the body of a patient after an operation).

Medical malpractice cases in which there is inadvertent surgical injury to a neighboring healthy portion of a person's body, such as happened here, are distinctive from other malpractice cases only in a factual and not a legal sense. Traditional rules regarding malpractice are therefore generally applied, *e.g.,* rules regarding the necessity of expert testimony. (See Annot., 37 A.L.R.3d 464 and cases cited therein.) In *Collins v. Meeker,* 198 Kan. 390, 424 P.2d 488 (1967), the court considered a summary judgment which was entered in favor of three defendants who had performed a hernia operation upon plaintiff. Plaintiff stated that he did not intend to produce expert evidence that two of the doctors were negligent in rebuilding the external inguinal ring so tightly that it interfered with the supply of blood to and from his left testicle and the flow of the secretions from it. The court could not say that any alleged negligence negatived the need for expert testimony in the case, stating further:

"[W]e are forced to conclude that a hernia operation, while it may be fairly common, is nonetheless an intricate and delicate procedure requiring considerable dexterity and intimate knowledge of the groin area itself and the organs which are therein located. The operation, in our opinion, is far too complex and technical, and the possible results too numerous and unpredictable, to permit lay witnesses to express opinions as to the proficiency with which the operation has been performed or to permit a jury to speculate as to the adequacy and skillfulness of its performance solely in the light of their common knowledge and experience." 198 Kan. at 399.

In a related portion of that opinion (distinguishable from the facts of this case because it involved the doctrine of res ipsa loquitur) the court considered a claim of negligence when one of the defendants cut into the spermatic cord of the plaintiff during exploratory surgery. The court rejected the plaintiff's contention that res ipsa loquitur was applicable and found rather that expert medical testimony was necessary to establish negligence on the part of the surgeon because it was not a case where common knowledge indicated that the injury would not have occurred if reasonable medical or surgical care had been used. In *Tatro v. Lueken,* 212 Kan. 606, the court again considered whether res ipsa loquitur was applicable in a case where the plaintiff's other-

wise healthy bladder was injured during a hysterectomy. The court cited *Collins v. Meeker* and rejected plaintiff's reliance on res ipsa loquitur because it felt the intricacies of an abdominal hysterectomy were at least comparable to or perhaps more complex than a hernia operation. In any event, in *Tatro* there was expert medical testimony to support the plaintiff's claim. We again reemphasize that the discussions in *Collins v. Meeker* and *Tatro v. Lueken* involved a res ipsa loquitur theory which has not been urged in the present case. Yet these cases demonstrate an extreme reluctance to usurp the province of medical experts regarding surgical techniques and injuries involving parts of the anatomy not within the everyday knowledge of persons generally.

Here, by its refusal to delete the instruction regarding the need to establish the standard of medical care by expert medical testimony, the trial court found that the injury sustained by the plaintiff during the cholecystectomy was not within the common knowledge generally held by lay persons. This finding may be supported by quick resort to the record. Without detailing the procedures and the parts of the anatomy involved in the operation, it is clear that the particular parts involved, *i.e.*, the common bile duct, the gallbladder, the cystic duct, etc., are not well known to lay people. Additionally, the crucial factors involved here were the proximity of the common bile duct and the cystic duct to the gallbladder itself and the technique required to remove the diseased gallbladder, which included severing the cystic duct. We do not believe that jurors could be expected to know without expert medical testimony whether the dissection of the common bile duct was negligence or whether it was necessary in order to remove the gallbladder. While the cholecystectomy itself might be a common operation, the surgical procedure is still complex to untrained minds. Furthermore, the testimony provided by the defendant and other medical witnesses established that the plaintiff had an abnormal anatomy in that the common bile duct was unusually small—an abnormality that could not have been ascertained until the operation was underway. In fact, Dr. O'Neil testified that he had never seen a common duct of such small diameter, and he had performed perhaps seven to eight hundred of these operations during his medical career.

In light of the above cited authority and the evidence adduced at trial, the trial court properly refused to delete the instruction

regarding the necessity of expert medical opinion to establish the requisite standard of care in this action.

It is difficult to cull from the briefs the precise nature of the plaintiff's argument with respect to the defendant's use of the word "accident" in plaintiff's medical records. If, as plaintiff has framed the issue, the use of the word "accident" merely establishes a prima facie case of negligence against the defendant, it would still be possible for the defendant to present evidence refuting such an allegation. Then the jury would determine whether the defendant had sufficiently refuted the plaintiff's prima facie case. In reality, however, the plaintiff seems to contend that the use of the word "accident" in the medical records by the defendant was tantamount to an admission of medical malpractice on his part, thereby obviating the need for expert medical testimony and requiring a directed verdict or judgment notwithstanding the verdict for the plaintiff. In his brief the plaintiff cites definitions from several Kansas cases to support his contention. The defendant cites his own definitions of "accident" from workmen's compensation cases and from Black's Law Dictionary.

We believe the crucial question on appeal is whether Dr. O'Neil's use of the word "accident" to describe the severing of plaintiff's common bile duct during the cholecystectomy establishes his negligence as a matter of law. To hold O'Neil's statements in the records constituted an admission of negligence would be inappropriate because the medical records should not be read in a vacuum. The defendant testified as to their significance and as to what he meant by the word "accident." This testimony was elicited by both counsel. While defendant admitted that severance of the common bile duct was accidental or inadvertent, he in no way conceded that the severance could not have occurred without his negligence. The expert called by the defendant agreed that while the occurrence was inadvertent, it was not tantamount to negligence. Therefore, even if the plaintiff, through the introduction of the records, had made a prima facie case of negligence, and the burden had shifted to the defendant to refute this contention, the jury could have found on the basis of the testimony offered that the defendant's actions were not negligent. The fact that the common bile duct was abnormally small on this particular individual, a fact that could not have been known until the actual surgery was performed, may not be disre-

garded either. While the dissection of the common bile duct during the removal of a gallbladder is extremely rare, in this instance medical testimony established that the abnormal anatomical feature of the plaintiff's common bile duct removed this particular cholecystectomy from the ranks of the normal.

To isolate the word "accident" and to attempt to ascribe some legal significance to it or to rely upon the definitions reported in the parties' briefs are inappropriate in this action where the evidence is viewed as a whole.

While cases exist where the severance of the common bile duct during a cholecystectomy does constitute negligence, see *Guillen v. Martin,* 166 Cal. App. 2d 172, 333 P.2d 266 (1958), that case still recognized that it is within the province of the jury to determine whether or not such an action constituted negligence. There the court found that there was sufficient evidence to conclude that defendant had severed the common bile duct and that plaintiff could rely upon res ipsa loquitur (again not an issue in our case) to make a prima facie case regarding its allegation of negligence. However, the court also acknowledged that another jury might have reached the opposite conclusion.

The second issue requires application of the traditional standard of review with respect to jury verdicts, that is, was there substantial competent evidence to support the jury's verdict. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 596 P.2d 816 (1979); *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 581 P.2d 372 (1978). We find there was substantial competent evidence to support the jury's verdict.

Judgment is affirmed.