(918 P.2d 658)

No. 72,671

CORI A. WECKER, *Appellant,* v. DOUGLAS J. AMEND, M.D., *Appellee.*

Opinion filed June 14, 1996.

*David P. Calvert,* of Focht, Hughey & Calvert, of Wichita, for appellant.

*Peter Collins, Eldon L. Boisseau,* and *Anne M. Hull,* of Turner and Boisseau, Chtd., of Wichita, for appellee.

Before BRAZIL, C.J., KNUDSON, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: Cori Wecker appeals from a verdict in favor of Douglas J. Amend, M.D., in her action alleging negligence by Amend for his failure to properly obtain her informed consent before performing laser surgery on her cervix.

Amend was Wecker's gynecologist and obstetrician. During a prenatal exam, Wecker's pap smear showed abnormal cells on the cervix. After the birth of the baby, Amend performed a biopsy of the cervix, which revealed a condyloma, or wart, caused by human papilloma virus (HPV). Amend explained to Wecker that the condyloma might be precancerous and recommended laser surgery to remove it.

Amend showed Wecker a video tape regarding laser surgery. Contained within the tape was the statement, "Laser surgery involves the same risks as with any surgical procedure. There is a small risk of excessive bleeding and possible infection, but those cases are not common and can be treated." Following the laser surgery, Wecker suffered excessive bleeding, and Amend eventually performed a total hysterectomy to control the bleeding. Wecker later underwent further surgeries and injections to control her pain.

In her lawsuit, Wecker complains that Amend did not obtain her informed consent in that he failed to inform her of alternative treatments, including the option of no treatment at all. At trial, Wecker called an expert witness, Dr. William Cameron, who testified that it would have been reasonable in this case to forego treatment and see if the wart would disappear. He further testified that in most cases, the wart would disappear without treatment. He also testified that it was a departure from the accepted standard of medical care to give the patient only one option—laser surgery—and fail to advise her of the option of doing nothing. Wecker also proffered testimony that she would not have undergone the laser surgery had she known that doing nothing was a medically acceptable alternative.

Amend presented evidence that HPV is a carcinogen which can cause cervical cancer, while the herpes simplex virus is a cocarcinogen. In other words, HPV and herpes may work together in causing cervical cancer. Wecker suffered from both herpes and HPV.

Amend's expert witnesses testified that laser surgery was indicated in Wecker's situation and that the option of no treatment would not have been in her best interest. The same witnesses also

testified that a variety of methods are available to treat a condyloma.

Wecker first argues that the trial court failed to properly instruct the jury on her theory of lack of informed consent.

The trial court has a duty to instruct the jury regarding the applicable law and plaintiff's theory of the case where that theory is supported by sufficient evidence. *Natanson v. Kline,* 186 Kan. 393, 412, 350 P.2d 1093, *reh. denied* 187 Kan. 186, 354 P.2d 670 (1960).

Here, Wecker requested and the trial court gave the following instruction regarding her theory of the case:

"The plaintiff Cori Wecker alleges that the defendant Douglas Amend, M.D., was negligent and that the defendant's negligence caused or contributed to damages that she sustained. The plaintiff alleges she did not give her informed consent to the laser surgery performed on June 12, 1991, in that the defendant did not:

(a) provide her with reasonable knowledge of the nature of the procedure and understanding of the risks involved, and the possible results to be anticipated; or

(b) provide her with the knowledge of alternative treatments; or

(c) provide her with the knowledge that she could choose not to undergo any procedure or treatment.

### "BURDEN OF PROOF—PLAINTIFF'S CLAIMS

"The plaintiff has the burden to prove that it is more probably true than not true that the defendant was negligent in at least one of the above respects, and that the defendant's negligence caused or contributed to damages sustained by the plaintiff."

Wecker also requested that the trial court give the following modified version of PIK Civ. 2d 15.16 regarding informed consent:

"A physician has a duty to make a reasonable disclosure to his patient of the *character of the patient's ailment,* the nature and probable consequences of the suggested or recommended treatment including the dangers within his knowledge which are possible in the treatment he proposes, *the options or hazards of failing to or choosing not to undergo any treatment or procedure at all, and the types and risks of alternative methods of treatment.*

"This disclosure is required in order that the patient will have a basis to make an intelligent informed consent to the proposed treatment. The duty of the physician to disclose is limited to those disclosures which a physician would reasonably make under the same or similar circumstances." (Modifications to PIK Civ. 2d 15.16 in italics.)

The trial court gave the instruction without the italicized language. The trial court also instructed the jury as provided in PIK Civ. 2d 15.15:

"A physician may not perform any surgical operation on a patient without the informed consent of the patient.

"Consent by a patient to be sufficient for the purpose of authorizing a particular procedure must be an informed consent. By informed consent is meant that the patient must have reasonable knowledge of the nature of the procedure and understanding of the risks involved, and the possible results to be anticipated."

Wecker argues that it was prejudicial error for the trial court to give PIK Civ. 2d 15.16 without her proposed modifications because the instruction did not fully state the doctrine of informed consent as it applied to her theory of Amend's negligence. Wecker concedes that Kansas courts have never directly addressed the issue of whether a physician has a duty to advise a patient of alternative treatments or the option of refusing treatment. However, Wecker contends that Kansas courts have also not limited a physician's duty to informing a patient only of the risks of the particular treatment suggested by the treating physician.

Amend counters with the argument that in Kansas the doctrine of informed consent does not require a physician to inform a patient of all possible alternative treatments, including the option of no treatment. Amend argues that to hold otherwise would be to ignore Kansas law and to expand the doctrine of informed consent beyond the parameters designated by the Kansas Supreme Court.

The comment following PIK Civ. 2d 15.16 explains that the instruction is based upon the doctrine of informed consent as established in a line of cases beginning with *Natanson.* The *Natanson* court quoted with approval the following rule: " 'A physician violates his duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment.' " 186 Kan. at 407 (quoting *Salgo v. Leland Stanford, Etc., Bd. Trustees,* 154 Cal. App. 2d 560, 317 P.2d 170 [1957]).

The court further explained:

"This rule in effect compels disclosure by the physician in order to assure that an informed consent of the patient is obtained. The duty of the physician to disclose,

however, is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances. How the physician may best discharge his obligation to the patient in this difficult situation involves primarily a question of medical judgment. So long as the disclosure is sufficient to assure an informed consent, the physician's choice of plausible courses should not be called into question if it appears, all circumstances considered, that the physician was motivated only by the patient's best therapeutic interests and he proceeded as competent medical men would have done in a similar situation." *Natanson*, 186 Kan. 409-10.

Later cases have further clarified the doctrine of informed consent. In *Yeates v. Harms*, 193 Kan. 320, 333, 393 P.2d 982 (1964), the Supreme Court ruled that a physician has no duty to inform a patient of "infinitesimal, imaginative, or speculative" risks. Furthermore, "[w]hat is a reasonable disclosure upon which an informed consent may rest depends upon the facts and circumstances of each case." *Tatro v. Lueken*, 212 Kan. 606, Syl. ¶ 4, 512 P.2d 529 (1973).

No Kansas case directly holds that a physician must inform a patient of the option of choosing no treatment at all. However, in situations where no treatment at all is a reasonable medically acceptable option, common sense dictates that such information constitutes a fact " 'which [is] necessary to form the basis of an intelligent consent by the patient to the proposed treatment.' " *Natanson*, 186 Kan. at 407. In other words, how can a patient give an informed consent to treatment for a condition if the patient is not informed that the condition might resolve itself without any treatment at all?

Wecker cites various out-of-state cases in support of her argument that a physician has a duty to inform a patient of alternative treatments and the option of no treatment. Wecker's argument is also supported by a text from Am. Jur. 2d quoted with approval by the *Tatro* court in its discussion of disclosure and informed consent. That text provides:

"The plaintiff-patient must prove the following elements to establish a case of physician negligence in failing to impart information so treatment could be chosen intelligently: (1) The defendant-doctor failed to inform the plaintiff-patient of alternative treatments, the reasonably foreseeable material risks of each alternative, and of no treatment at all. (2) The plaintiff-patient would have chosen no

treatment or a different course of treatment had the alternatives and the material risks of each been made known. (3) The plaintiff has been injured as a result of submitting to the treatment." 61 Am. Jur. 2d, Physicians, Surgeons, Etc., § 199.

· Where, as here, a plaintiff presents evidence that doing nothing—or merely watching a medical·condition to see if it goes away on its own—is a medically acceptable alternative, and the plaintiff presents evidence that the defendant's failure to advise her of the option of doing nothing was a deviation from the accepted standard of medical care, the trial court should instruct the jury that a physician has a duty to advise a patient of the option of choosing no treatment at all. Where there is evidence that alternative treatments are available, the court should also instruct the jury that a physician has a duty to advise a patient of alternative treatments.

While Amend presented evidence that doing nothing was not a medically acceptable alternative, that fact does not change the analysis. The question of whether doing nothing was a medically acceptable alternative was one for the jury to decide, and the jury needed proper instructions to do so.

PIK Civ. 2d 15.16 is an accurate statement of the law, as far as it goes; however, it does not include language indicating that a physician has a duty to advise a patient of alternative treatments, including the option of no treatment, where that option is a medically acceptable alternative.

"The pattern jury instructions for Kansas (PIK) have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." *State v. Whitaker*, 255 Kan. 118, Syl ¶ 1, 872 P.2d 278 (1994).

On the facts of this case, it was prejudicial error for the trial court not to include the requested modifications to the jury instruction on informed consent.

. Wecker argues that the giving of instruction 14 was error and that the instructions as a whole were inconsistent. Instruction 14 was based upon PIK Civ. 2d 15.11 and read as follows:

"Where, under the usual practice of the profession of the defendant, Dr. Douglas Amend, different courses of treatment are available which might reasonably be used, the physician has a right to use his best judgment in the selection of the choice of treatment.

"However, the selection must be consistent with the skill and care which other physicians practicing in the same field in the same or similar community would use in similar circumstances."

We agree that it was error for the trial court to give the instruction but not for the reasons advanced by Wecker.

Wecker contends that the instruction does not accurately reflect the law in Kansas because it states that a physician has a right, rather than a duty, to use his or her best judgment in selecting treatment and that a literal reading of the instruction indicates the patient has no right to select the treatment.

The real problem with the instruction is that the facts of this case do not put into issue the question whether Amend properly selected between two or more courses of treatment. The evidence was that only one treatment—the laser surgery— was ever suggested to Wecker. The real issue, therefore, is whether Wecker was properly informed of her options sufficient to allow her to give an informed consent to a course of treatment.

We have already held that the trial court erred in failing to properly inform the jury on informed consent. It was also error for the court to give instruction 14 as it is not supported by the evidence.

We need go no further regarding the issue of inconsistent instructions as it is now moot.

Wecker's next argument is that the trial court erred in excluding her testimony that she would not have undergone laser surgery had she known that doing nothing was a medically acceptable alternative.

During direct examination of Wecker, her counsel asked, "If you had been told by Dr. Amend before this laser surgery that you had an alternative and that one alternative was to do nothing, that is to sit back and wait and watch the condyloma, what would you have done?" Amend objected on the grounds of relevancy and materiality and that it is "not an issue of informed consent." The trial court sustained the objection.

Wecker then proffered testimony that she would not have undergone the laser surgery had she known that doing nothing was an alternative. Wecker argues that the trial court erred in not allowing the jury to hear the proffered testimony because it went to prove causation, a necessary element of her case.

"Whether a patient would have refused treatment or a medical procedure had the physician made adequate disclosure is to be determined objectively. If adequate disclosure could reasonably be expected to have caused the patient to decline the treatment or procedure because of revelation of the kind of risk or danger which resulted in her harm, causation is shown but otherwise not, *and the patient's testimony is relevant on such issue,* but should not be controlling." (Emphasis added.) *Funke v. Fieldman,* 212 Kan. 524, 537, 512 P.2d 539 (1973).

Here, it is not the failure to disclose the risks of the procedure but the failure to disclose the option of no treatment that is at issue. However, we hold the same analysis should apply. Wecker was still required to show causation—that a reasonable person would not have undergone the laser surgery had he or she known that doing nothing was a medically acceptable alternative. Plaintiff's testimony on that point, while not controlling, was relevant and should have been admitted.

Finally, Wecker argues it was error for the trial court to exclude Dr. Weed's testimony that the laser surgery had caused all of her subsequent medical problems.

As part of Wecker's case in chief, portions of the deposition of Dr. Weed, one of Amend's expert witnesses, was read into evidence. During the reading of the deposition, Amend objected to the following question as being leading and without foundation: "Everything in the records that you read of her treatment and things that happened to her after the laser surgery were all as a result of the laser surgery and the subsequent bleeding episode?" The objection was sustained without explanation. Wecker argues that it was error to sustain the objection on either ground raised by Amend.

K.S.A. 60-232(d)(3)(B) provides:

"Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, . . . and errors of any kind which might be obviated, removed or cured if promptly presented,

are waived unless seasonable objection thereto is made at the taking of the deposition."

Amend did not object to the question as leading during the deposition; therefore, he waived any such objection at trial.

Regarding foundation, Wecker argues that Dr. Weed testified that he was qualified, had read her medical records, and had an opinion to a reasonable medical probability. Accordingly, Wecker had provided proper foundation.

Amend does not explain why the trial court's ruling was correct; however, he argues that if the court erred, the error was harmless. He further argues that Wecker had the opportunity to cross-examine Dr. Weed during the trial and, therefore, could have taken curative measures during the course of the trial and should not now be allowed to claim error.

The trial court did not explain its reasons for sustaining Amend's objection, and Amend has offered no justification on appeal for the court's ruling. Wecker has demonstrated that she laid an adequate foundation for the question. The trial court erred in sustaining the objection.

Reversed and remanded for new trial.