(195 P.3d 785)

No. 98,737

MARY ANN ROJAS, *Appellant*, v. PATRICK N. BARKER, M.D., *Appellee*.

Opinion filed November 14, 2008.

*John W. Johnson*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant.

*Peter G. Collins* and *Michael D. Smith*, of Sanders, Conkright & Warren, L.L.P., of Overland Park, for appellee.

*Jerry D. Hawkins*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, for *amicus curiae* Kansas Association of Defense Counsel.

*James R. Howell*, of Prochaska, Giroux & Howell, of Wichita for *amicus curiae* Kansas Association for Justice.

Before CAPLINGER, P.J., MARQUARDT and STANDRIDGE, JJ.

CAPLINGER, J.: In this medical malpractice action, Mary Ann Rojas alleges Patrick M. Barker, M.D., negligently performed her hernia surgery and failed to obtain her informed consent to the surgery. The district court granted partial summary judgment in favor of Dr. Barker on Rojas' informed consent claim, finding Rojas failed to establish causation with respect to that claim. However, the court permitted Rojas' negligence claim to go to the jury, which returned a verdict for Dr. Barker. Prior to trial, the district court sustained a motion limiting the amount of medical expenses.

In this appeal, Rojas argues the district court erred in granting partial summary judgment on her informed consent claim and in sustaining Dr. Barker's pretrial motion limiting medical expenses.

We affirm the district court's award of partial summary judgment on Rojas' informed consent claim based upon Rojas' failure to es-

tablish causation. Further, we decline to address the district court's limitation of damages, as the issue is moot in light of our decision affirming partial summary judgment.

*Factual and procedural background*

On September 30, 2003, Rojas consulted Dr. Barker for treatment of a painful ventral hernia which had developed at the site of a scar left by a prior surgery. Dr. Barker recommended that Rojas lose 20-30 pounds prior to the surgical repair of the hernia. However, on October 7, 2003, Rojas again saw Dr. Barker after determining the pain caused by the hernia was too severe to wait any longer for surgery. Surgery was scheduled for October 14, 2003. On that date, Dr. Barker performed a diagnostic laparoscopy, laparoscopic enterolysis, an exploratory laparotomy, abdominal enterolysis, and a ventral incisional herniorrhaphy to "take down" or lyse any abdominal adhesions and repair the hernia. The following day, Dr. Barker left the United States, and Randall Beech, M.D., assumed responsibility for Rojas' care.

Rojas claims she was not informed by Dr. Barker that he would be unavailable following her surgery, nor was she advised that Dr. Beech would assume her care during Dr. Barker's absence. Dr. Barker claims, however, that consistent with his habit and practice, he advised Rojas that he was leaving town on October 15, 2003, for an extended period and her care would be assumed by Dr. Beech, a general surgeon practicing in a nearby community.

On October 15, 2003, Dr. Beech noted that Rojas had a bowel obstruction, a condition which, according to Beech, is not uncommon following abdominal surgery. From October 16, 2003, to October 18, 2003, Rojas remained in stable condition, but Dr. Beech noted that Rojas continued to have a bowel obstruction, a distended abdomen, and a low-grade fever.

Rojas experienced severe abdominal pain, a spike in temperature, and a change in her complete blood count on October 19, 2003. Dr. Beech ordered an abdominal x-ray which revealed a prominence of subcutaneous emphysema on Rojas' right abdominal wall and a moderately large amount of free intraperitoneal air.

In other words, Rojas had air trapped within the tissue of the right abdominal wall and air floating freely within her abdominal cavity.

Dr. Beech obtained Rojas' consent to perform a second surgery, during which he discovered extensive inflammation and adhesions in Rojas' abdominal cavity and two to three small perforations of her small intestine. Dr. Beech took down several adhesions and performed a small bowel resection. On November 3, 2003, Dr. Barker returned to the hospital and arranged to have Rojas transferred to another hospital for follow-up care. Rojas was later transferred to a third hospital where she underwent additional operations and experienced a prolonged recovery period.

Rojas timely filed this action against both Dr. Barker and Dr. Beech, alleging generally that both doctors were "negligent and departed from the accepted standard of care" in providing care and treatment to Rojas. Following discovery, the district court granted Rojas' voluntary motion to dismiss her negligence claim against Dr. Beech with prejudice.

In the pretrial order, Rojas alleged Dr. Barker (1) failed to obtain informed consent for the initial surgery because he failed to notify her of his unavailability to provide follow-up care after her surgery; and (2) failed to identify and repair multiple perforations during the hernia surgery. Rojas made no claim in the pretrial allegations that Dr. Barker, or any other party, was negligent for failing to timely diagnose the bowel perforations following surgery.

Dr. Barker moved for partial summary judgment on Rojas' informed consent claim based upon Rojas' failure to establish causation. The district court granted the motion, finding no "causative factor" between Dr. Barker's unavailability following surgery and Rojas' injuries. The court also sustained Dr. Barker's pretrial motion to limit evidence of Rojas' recoverable damages to the amount of medical expenses actually paid by Medicare rather than the amount of medical expenses billed by Rojas' health care providers prior to applying "write-offs." The parties later agreed to stipulate to the amount of medical expenses paid and billed, and further agreed to submit the total amount billed to the jury during deliberations.

The case was tried to a jury, which returned a verdict in favor of Dr. Barker on Rojas' remaining negligence claims.

*Discussion*

Rojas first claims the district court erred in granting Dr. Barker's motion for summary judgment on the informed consent claim. Specifically, Rojas contends Dr. Barker failed to obtain informed consent for the hernia surgery because "he failed to inform her he would be leaving town the day after an elective surgery . . . and [would] not be available to provide any follow-up care or treatment." Dr. Barker responds that partial summary judgment was appropriate because Rojas failed to present prima facie evidence that his alleged failure to obtain consent caused Rojas' injuries.

A. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A district court must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the adverse party. To avoid summary judgment, the adverse party must come forward with evidence to establish a genuine issue of material fact, and the facts subject to the dispute must be material to the conclusive issues in the case. *Robbins v. City of Wichita*, 285 Kan. 455, 460, 172 P.3d 1187 (2007).

B. The Doctrine of Informed Consent

The doctrine of informed consent in Kansas was established in *Natanson v. Kline*, 186 Kan. 393, 350 P.2d 1093 (1960) (*Natanson I*), where our Supreme Court held:

"Where no immediate emergency exists, a physician violates his duty to his patient and subjects himself to liability for malpractice, . . . if he makes no disclosure of significant facts within his knowledge which are necessary to form the basis of an intelligent consent by the patient to proposed . . . treatment." 186 Kan. 393, Syl. ¶ 4, 350 P.2d 1093 (1960).

Under this doctrine, medical professionals have a duty to provide sufficient information to their patients to permit patients to make

intelligent, informed decisions about medical treatment. A physician or surgeon is obligated to inform the patient of the nature of the patient's illness, of the significant risks and consequences inherent to the proposed treatment or procedure, and of reasonable, medically acceptable alternatives to the proposed treatment, including the option to forego treatment altogether. See *Tatro v. Lueken*, 212 Kan. 606, 616, 512 P.2d 529 (1973); *Funke v. Fieldman*, 212 Kan. 524, 531, 512 P.2d 539 (1973); *Natanson v. Kline*, 187 Kan. 186, 188, 354 P.2d 670 (1960) (*Natanson II*); *Natanson I*, 186 Kan. at 410; and *Wecker v. Amend*, 22 Kan. App. 2d 498, 502, 918 P.2d 658, *rev. denied* 260 Kan. 1002 (1996); see also PIK Civ. 4th 123.15 (defining informed consent as "reasonable knowledge of the nature of the procedure and understanding of the risks involved, and the possible results to be anticipated").

The rationale underlying the doctrine of informed consent is that while a patient may seek the guidance of medical professionals, the ultimate decision of whether to proceed with a particular course of treatment, or to decline treatment, belongs solely to the patient. See *Natanson I*, 186 Kan. at 406-07 (noting that the law does not permit a doctor to substitute his or her own judgment for that of a patient); 1 Pegalis, American Law of Medical Malpractice § 4:1, p. 285 (3d ed. 2005) ("patient autonomy is the value invoked to justify informed consent").

As a preliminary matter, we note that it is undisputed that Rojas sustained injuries during the hernia surgery. On the fifth day following the surgery, Dr. Beech performed exploratory surgery and found perforations in at least three areas of Rojas' small intestine. Rojas' expert witness, Dr. Shapiro, opined that bowel perforations discovered within 5 days of surgery generally are a result of the surgery itself. Dr. Barker did not dispute this evidence. The remaining issues, then, are (1) whether Dr. Barker had a duty to disclose his planned absence, (2) whether Dr. Barker failed to make that disclosure, and, (3) if so, whether that failure caused Rojas' injuries.

C. Existence and Breach of a Duty

Rojas asserts that Dr. Barker had a duty to disclose his planned

absence following her surgery, and that his failure to do so constituted a breach of Barker's duty to obtain her informed consent to the surgery. Rojas asserts that if she had been advised of Dr. Barker's planned absence she would have declined the operation, thus sustaining no injuries.

The existence of a duty is a question of law, subject to de novo review. *Robbins*, 285 Kan. at 460.

The duty to disclose information under the informed consent doctrine " 'is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances.' " *Funke*, 212 Kan. at 532 (quoting *Tatro*, 212 Kan. 606, Syl. ¶ 3); see also *Natanson I*, 186 Kan. at 407 (a physician violates his or her duty to a patient and subjects himself or herself to liability if the physician withholds any facts which are reasonably necessary to form the basis of an intelligent consent by the patient to the proposed treatment).

Rojas argues on appeal that genuine issues of fact preclude summary judgment on the issue of whether Dr. Barker breached the standard of care as it relates to informed consent. However, Dr. Barker acknowledges in his appeal brief that he "does not dispute the existence of a genuine question of material fact on the prima facie elements of duty and breach of duty."

Instead, Dr. Barker argues only that the district court properly granted summary judgment on Rojas' informed consent claim because Rojas cannot establish a causal connection between his alleged deviation from the standard of care regarding informed consent and Rojas' injuries.

Dr. Barker points out that Rojas voluntarily dismissed her claims of negligence against Dr. Beech. Thus, he reasons that Rojas abandoned her claim that the risk to which she was subjected by Dr. Barker's failure to inform her of his absence (*i.e.*, a delay in diagnosis or a compromising of her care) caused Rojas' injuries.

D. Causation

Because the parties agree that genuine issues of material fact remain as to (1) whether Dr. Barker had a duty to disclose his planned absence, and (2) whether he breached that duty, we must next consider whether the district court properly concluded that

no genuine issues of material fact remain as to whether Dr. Barker's breach caused Rojas' injuries. Whether a causal connection exists between the breach and the resulting injury is a question of fact. *Calwell v. Hassan*, 260 Kan. 769, 777-78, 925 P.2d 422 (1996). Causation is an essential element of any negligence claim, including one based on informed consent. *Natanson II*, 187 Kan. at 190.

Rojas relies upon *Natanson I*, 186 Kan. 393, to support her claims regarding causation, which she summarizes at page 12 of her brief: "The effect of the Court's statements in *Natanson* is that if a disclosure is not made and the disclosure would have caused the patient not to undergo certain treatment, then causation is proven."

Dr. Barker strongly disagrees with Rojas' interpretation of *Natanson* and relies upon both *Natanson I* and *Funke*, 212 Kan. 524, for the proposition that "[w]hile the plaintiff does not need to allege injury was caused by negligence to advance a claim of lack of informed consent, the plaintiff must contend the undisclosed risk materialized and caused harm to plaintiff." A brief discussion of each of these cases is helpful to our analysis.

In *Natanson I*, the plaintiff underwent a radical mastectomy and removal of her ovaries and fallopian tubes after being diagnosed with cancer. The defendant physician recommended cobalt irradiation treatment, a relatively new treatment at that time. The defendant failed to disclose to the plaintiff the potentially serious risks of injury inherent to cobalt irradiation therapy, including skin, bone, and tissue damage. The plaintiff consented to the treatment and suffered chest, skin, cartilage, and bone damage in the area where she received the cobalt irradiation treatment.

Rojas relies upon the *Natanson I* court's statement that because the defendant failed to disclose the serious risks of treatment, the defendant was guilty of malpractice "no matter how skillfully the treatment may have been administered." 186 Kan. at 411. In discussing causation, the court also pointed out that where "the patient fully appreciates the danger involved, the failure of a physician in his duty to make a reasonable disclosure to the patient would have no causal relation to the injury." 186 Kan. at 410.

Upon rehearing, the court in *Natanson II* restated its holding regarding causation using slightly modified terminology. The court found that "a causal relation must be established by the patient, between the negligent act of the physician and the injury of the patient, to sustain the burden of proof where damages are sought in a malpractice action for injury." 187 Kan. at 190-91.

The plaintiff would have us ignore the fact that in *Natanson I* and *II*, the defendant failed to warn the plaintiff of the risk of the very type of injury which plaintiff eventually suffered. However, we think that fact underlies the court's holding requiring the patient to establish that had he or she been fully informed of the risks associated with a procedure, the patient would not have agreed to the procedure.

That the plaintiff must suffer injury of the type the physician failed to warn about is evident from the court's subsequent holding in *Funke*, 212 Kan. 524. There, the defendant anesthesiologist advised the plaintiff that a headache was the worst side effect the plaintiff could expect from a spinal anesthetic. And, although the defendant administered the spinal anesthetic in a nonnegligent fashion, the plaintiff sustained nerve damage.

The *Funke* court concluded that the defendant knew or should have known that the administration of spinal anesthesia carried with it more substantial risks than a mere headache, that he misinformed the plaintiff, and that he failed to obtain informed consent. 212 Kan. at 534-35. The court reversed the case for a new trial and indicated that the plaintiff's testimony about whether she would have refused the spinal anesthetic if informed of the additional risks would be relevant but not controlling on the issue of causation. Further, the court clarified that an objective standard must be used to determine whether a reasonable patient in similar circumstances would have refused treatment. 212 Kan. at 535-38.

Of particular significance to our holding in this case are two passages from *Funke*, which succinctly explain the elements of causation with respect to a claim that the physician breached the duty to obtain informed consent:

"No more than breach of any other legal duty does nonfulfillment of the physician's obligation to disclose alone establish liability to the patient. *An unrevealed*

*risk that should have been made known must materialize, otherwise the omission, however unpardonable, is legally without consequence. Occurrence of the risk must be harmful to the patient, for negligence unrelated to injury is non-actionable.* And, as in malpractice actions generally, there must be a causal relationship between the physician's failure to adequately divulge the risks and damage to the patient. [Citation omitted.]" (Emphasis added.) 212 Kan. at 535.

"If adequate disclosure could reasonably be expected to have caused the patient to decline the treatment or procedure *because of revelation of the kind of risk or danger which resulted in her harm,* causation is shown, but otherwise not." (Emphasis added.) 212 Kan. at 537.

Our review of *Natanson I, Natanson II,* and *Funke* reveals that a plaintiff proves causation in an informed consent case by showing (1) an objectively reasonable patient would have declined treatment had the patient been advised of a material risk or danger; (2) the patient was not advised of a material risk or danger; and (3) that risk or danger materialized, resulting in harm to the patient.

Despite the court's seemingly clear statements in *Funke* regarding causation in an informed consent case, Rojas relies upon this court's opinion in *Wecker,* 22 Kan. App. 2d 498, to suggest that causation in an informed consent case does not require proof that the risk that was not disclosed ultimately resulted in injury to the patient.

In *Wecker,* the defendant physician recommended laser surgery to treat abnormal cells found on the plaintiff's cervix. While the defendant informed the plaintiff that a risk inherent to the laser surgery was excessive bleeding, he did not inform the plaintiff that, in some cases, abnormal cells resolve themselves and nontreatment is a medically acceptable alternative to laser surgery. The plaintiff consented to the surgery, suffered excessive bleeding, and the defendant eventually performed a total hysterectomy to resolve the bleeding.

The *Wecker* panel concluded that the defendant failed to obtain the plaintiff's informed consent because he failed to disclose the alternative option of nontreatment. The panel reversed and remanded the case for a new trial, concluding the jury should have been instructed that the physician had a duty to disclose the alternative option of nontreatment, and that the plaintiff's testimony as

to whether she would have declined the surgery would be relevant to establish whether a reasonable patient in the same situation would have declined surgery. 22 Kan. App. 2d at 503-05.

As Dr. Barker points out, *Wecker* could not have modified our Supreme Court's prior holdings regarding the elements required to establish causation in an informed consent case. Instead, he suggests *Wecker* merely expands existing "informed consent jurisprudence" to include the requirement that physicians inform patients of the option of refusing medical treatment when doing so would be a reasonable alternative to the treatment proposed.

Like Dr. Barker, we read *Wecker* narrowly. We note that the *Wecker* panel considered a failure to inform of alternative treatments, not the failure to inform of risks of a planned treatment. While the instant case arguably falls on a continuum somewhere between these two types of claims, we think it more closely resembles the latter claim rather than the former.

The primary concerns of a patient advised that her surgeon will be unavailable for postsurgical follow-up would certainly include the risk that the patient would not receive proper postoperative care and treatment, or that a complication of the surgery would go undiagnosed or would not be timely diagnosed. Significantly, Rojas made none of these allegations, nor any other allegation of negligence with respect to her postsurgical care.

Finally, we note that to the extent that *Wecker* cannot be reconciled with the holding of *Funke*, we are bound by the Supreme Court's clear statements in *Funke* regarding the proof required to establish causation for a claim of failure to obtain informed consent.

We conclude the material, uncontroverted facts demonstrate that Rojas failed to establish a causal connection between the alleged breach of Dr. Barker's duty to obtain Rojas' informed consent and her injuries. The district court appropriately granted partial summary judgment to Dr. Barker on Rojas' informed consent claim.

E. Damages

As Rojas acknowledges in her appeal brief, this court's conclu-

sion that the district court properly granted partial summary judgment on her informed consent claim renders moot her claim that the district court erred in sustaining Dr. Barker's motion to limit evidence regarding damages. Hence, we decline to consider that issue.

Affirmed.