No. 119,537

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REIFERD ACORD,
*Appellant*,

v.

SCOTT W. PORTER, M.D.; THOMAS R. RESCH, M.D.; PAUL B. HARRISON, M.D.;
TYLER H. TERNES, M.D.; JAMES B. WINBLAD, M.D.; JEFFREY S. KAO, M.D.; and
ARTI GUPTA, M.D.,
*Appellees.*

SYLLABUS BY THE COURT

1.

The standard for granting summary judgment—whether completely or partially—is governed by K.S.A. 2019 Supp. 60-256 and Kansas Supreme Court Rule 141 (2020 Kan. S. Ct. R. 205).

2.

To establish medical malpractice, a plaintiff must prove:  (1) the health care provider owed a duty of care to the patient; (2) the health care provider breached that duty or deviated from the appropriate standard of care; (3) the patient was injured; and (4) the injury was proximately caused by the health care provider's breach of the appropriate standard of care.

3.

Under the doctrine of informed consent, a health care provider is required to disclose sufficient information to allow his or her patient—in the absence of an emergency—to intelligently consent to the proposed treatment. A claim of lack of informed consent is a type of medical malpractice claim.

4.

The rationale underlying the doctrine of informed consent is that in the absence of an emergency, the ultimate decision of whether to proceed with a particular course of treatment belongs to the patient.

5.

The duty of a health care provider to disclose information under the informed consent doctrine is not unlimited. Rather, the duty is limited to those disclosures which a reasonable health care provider would make under the same or similar circumstances.

6.

To establish the essential element of causation in an informed consent case, the plaintiff must show that a reasonable patient would have declined the medical procedure if adequate disclosure of the risk or danger was made by the health care provider. This is an objective standard. Even though the patient's testimony regarding whether he or she would have consented to the medical procedure may be considered, it is not controlling.

7.

In Kansas, a plaintiff in a medical malpractice case bears the burden of proving that a health care provider breached the appropriate standard of care and also that the breach caused the injury or damage claimed.

8.

Except where the lack of reasonable care or the existence of causation would be apparent to the average layperson based on his or her common knowledge or experience, Kansas law requires expert testimony in a medical malpractice action to establish both the accepted standard of care and to prove causation.

9.

In medical malpractice actions, the opinions rendered by expert witnesses should generally be limited to matters which are within a reasonable degree of probability and should not include possibilities. The rules relating to expert witnesses also apply to medical malpractice claims based on an alleged breach of the doctrine of informed consent.

10.

Nonfulfillment of a health care provider's duty to disclose certain information to a patient is not sufficient—in and of itself—to establish liability. Instead, it must be shown that the occurrence of the undisclosed risk resulted in harm to the patient. In other words, a plaintiff must establish a causal relationship between a health care provider's failure to adequately disclose the risks of a procedure and the damage to the patient.

11.

A plaintiff proves causation in a lack of informed consent case by showing (1) an objectively reasonable patient would have declined treatment had he or she been advised of a material risk or danger; (2) the patient was not advised of the material risk or danger; and (3) the undisclosed risk or danger actually materialized, resulting in harm to the patient.

12.

In Kansas, a health care provider is not strictly liable under the doctrine of informed consent for failing to disclose information to a patient that a reasonable health care provider would disclose. Instead, to prevail on a lack of informed consent claim, a causal connection must be established—normally by expert testimony offered within a reasonable degree of medical probability—between the health care provider's failure to adequately disclose material information and the harm ultimately suffered by the patient.

3

13.

An error in the admission or exclusion of evidence at trial only warrants reversal where there is a reasonable probability that the erroneous ruling influenced the outcome of the trial and denied substantial justice.

14.

Where an error is predicated on evidence excluded as a result of the granting of a pretrial motion in limine, the error must be preserved by a proffer of the evidence in question during trial or in a motion for reconsideration.

15.

A district court's decision on a motion to amend to add a punitive damage claim is reviewed under an abuse of discretion standard.

16.

Punitive damages are intended to punish a defendant for malicious, vindictive, or willful and wanton invasion of another's rights. The ultimate purpose of an award of punitive damages is to deter others from the commission of similar wrongs.

17.

A district court may allow the filing of an amended petition claiming punitive damages only when a plaintiff has established there is a probability that the plaintiff will prevail on the claim by clear and convincing evidence.

Appeal from Sedgwick District Court; TIMOTHY G. LAHEY and ERIC A. COMMER, judges. Opinion filed September 25, 2020. Affirmed.

*Craig Shultz*, of Shultz Law Office, P.A., of Wichita, for appellant.

4

*Matthew A. Spahn*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellees Scott W. Porter, M.D. and Paul B. Harrison, M.D.

*Gregory S. Young*, *Brian L. White*, and *Mark R. Maloney*, of Hinkle Law Firm LLC, of Wichita, for appellees Thomas R. Resch, M.D., James B. Winblad, M.D., and Jeffrey S. Kao, M.D.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

BRUNS, J.:  In this medical malpractice action, Reiford Acord appeals from the district court's pretrial rulings on certain motions as well as from the jury's verdict in favor of the defense. The action arises out of a laparoscopic ventral hernia repair surgical procedure performed by Scott W. Porter, M.D. and Thomas R. Resch, M.D. at Wesley Medical Center. At the time of the surgery, Dr. Porter was a board-certified surgeon and Dr. Resch was a fifth-year surgical resident. Several days following the surgery, a perforation in Acord's small intestine was discovered. Dr. Paul B. Harrison, who is also a board-certified surgeon, and Dr. Resch repaired the perforation. It is undisputed that perforation of the bowel is a recognized complication of laparoscopic ventral hernia repair surgery.

Acord brought this action against the three surgeons as well as four radiologists in which he asserted multiple claims for relief. Prior to trial, the district court granted partial summary judgment to both Dr. Porter and Dr. Resch on Acord's informed consent claim. The district court also granted partial summary judgment to Dr. Porter on Acord's claim that he failed to adequately supervise Dr. Resch during the surgery. In addition, the district court denied Acord's motion to amend his petition to add a claim for punitive damages. Moreover, Acord asserted several additional claims against the various health care providers that are not material to this appeal.

At the conclusion of a 14-day trial, the jury returned a verdict finding no fault as to any of the health care providers. On appeal, Acord contends that the district court erred in

granting partial summary judgment to Dr. Porter and Dr. Resch on his informed consent claim; that the district court erred in granting partial summary judgment to Dr. Porter on his claim for failure to supervise Dr. Resch; that the district court erred in excluding certain evidence at trial; and that the district court erred in instructing the jury regarding the appropriate standard of care. Acord also contends that the district court erred in denying his motion to amend his petition to add a claim for punitive damages.

After a review of the record in light of Kansas law, we conclude that the district court appropriately granted partial summary judgment to Dr. Porter and Dr. Resch on Acord's informed consent claim. Likewise, we conclude that the district court appropriately granted partial summary judgment to Dr. Porter on Acord's failure to supervise claim. We also conclude that the district court did not abuse its discretion in ruling on evidentiary issues at trial nor did it err in instructing the jury regarding the appropriate standard of care. Finally, we find that the district court did not abuse its discretion in denying Acord's motion to amend his petition to add a claim for punitive damages. Thus, we affirm the jury's verdict and the final judgment entered by the district court.

FACTS

On March 15, 2013, Acord went to Wesley Medical Center for outpatient surgery. This was Acord's fourth laparoscopic ventral hernia surgical repair. Dr. Porter, who is a board-certified surgeon, and Dr. Resch, who was the chief surgical resident in his fifth year of residency, performed the hernia repair surgery that is at issue in this case. Although both physicians were present during the entire surgery, it appears from the record on appeal that Dr. Resch performed the majority of the surgery under Dr. Porter's supervision.

6

Following the hernia repair surgery, Acord remained in the hospital for observation. Four days after the surgery, Dr. Resch and Dr. Harrison performed an exploratory laparotomy after Acord's condition rapidly deteriorated. During the exploratory surgery, Dr. Resch and Dr. Harrison discovered and repaired a perforation in Acord's bowel. Although he survived the surgery, Acord spent two months in intensive care and continued to receive treatment at various facilities over the next year. He continues to suffer from a variety of health problems related to the perforation of his bowel and has incurred a large amount of medical expenses.

Acord had gone to Dr. Porter because he had performed one of Acord's prior laparoscopic ventral hernia repair surgeries. As a part of the preparation for the outpatient surgery, Acord signed a document entitled "Conditions of Admission" that was provided to him by Wesley Medical Center. Among other things, the admissions document included a consent for the upcoming surgery. In particular, the admissions document signed by Acord stated that "as part of their training, students in health care education may participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and hospital staff."

On the morning of the surgery, Acord signed another document at Wesley Medical Center entitled "Consent for Surgical or Other Procedure" in which Dr. Porter was listed as the surgeon. The consent document also stated that "other health care practitioners may participate in performing [the procedure]." However, no other health care providers were listed by name in the document. Although Acord does not deny signing the "Conditions of Admission" and the "Consent for Surgical or Other Procedure," he does not recall reading the documents prior to signing them.

The events between the time Acord arrived at the hospital and the beginning of the surgery are unclear from the record. It seems that none of the parties have a particularly

7

good recollection of what occurred on the day of the surgery other than what is stated in the medical record. According to the medical record, Dr. Resch performed a history and physical examination of Acord prior to the surgery. Likewise, the medical records and deposition testimony show that Dr. Porter had previously explained to Acord the complications associated with laparoscopic ventral hernia repair surgery. These risks included the potential for a perforation of the bowel during the surgical procedure.

Acord does not remember meeting or talking to Dr. Resch prior to the surgery. Further, Acord does not believe he was informed that Dr. Resch was going to be involved in the surgical procedure. When asked in his deposition whether he would have declined the surgery if he had been told a resident would be involved, Acord answered: "I don't know. I can't answer that." Later, in an affidavit in support of his motion to amend his petition to include a claim for punitive damages, Acord stated he would not have consented to the surgery had he been informed that Dr. Resch would perform the majority of the procedure.

During the surgery, neither Dr. Porter nor Dr. Resch noticed a perforation to the bowel, and it is not known when the perforation actually occurred. Although both Dr. Porter and Dr. Resch participated in the surgery, neither physician can recall who did what parts of the procedure. Dr. Resch testified that he believes that it is likely that he performed the majority of the surgery. Dr. Porter testified that he and Dr. Resch probably divided the tasks during the surgery nearly evenly. However, Dr. Porter also recognized that it was likely that Dr. Resch performed the majority of the procedure under his supervision.

Following the surgery, Dr. Resch dictated the operative report that is included in the medical record. The next day, Dr. Porter went on vacation. Before leaving town, Dr. Porter arranged for Dr. Harrison, who is also a board-certified surgeon, to cover for him. As a result, Acord was monitored by Dr. Harrison and Dr. Resch in the days following

8

the surgery. In addition, four radiologists provided post-operative care to Acord. Although they were also named as defendants in this action, their involvement is not material to the issues presented on appeal.

Acord asserts that he first found out about the extent of Dr. Resch's involvement in his hernia repair surgery when Dr. Porter was deposed in this medical malpractice action. However, Acord's wife testified that she recalls meeting Dr. Resch after the surgery. Also, as indicated above, the medical records indicate that Dr. Resch performed a history and physical examination on Acord on the morning of surgery. Likewise, Dr. Resch testified in his deposition that he informed Acord about his involvement in the surgery prior to the operation.

According to Dr. Porter, Acord's fourth laparoscopic ventral hernia repair surgery required two surgeons due to the extent of adhesions in the patient's abdomen. Dr. Porter also testified that he and Dr. Resch performed the surgery using a team approach. Further, Dr. Porter asserted that he was directly involved in supervising Dr. Resch and observing everything that Dr. Resch did during the surgery. Specifically, Dr. Porter testified:

> "So I would be there the whole entire time, and in an operation like this where you are working from both sides of the table, it may be as simple as, okay . . . there is an easier place to work over on his side. Let's switch and move to the left side and work on this set of adhesions or don't do that if I . . . felt that he was doing something that I disagreed with."

In addition, Dr. Porter testified that he and Dr. Resch had performed surgeries together on many different occasions over the course of Dr. Resch's surgical residency. According to Dr. Porter, it was his custom to observe and supervise everything Dr. Resch did during surgery. Dr. Porter also asserted that he was present during the entire surgery and would have directed Dr. Resch if he thought he was not doing something properly.

9

Dr. Porter also stated that by having both he and Dr. Resch in the operating room, it provided two sets of eyes to look inside Acord's abdominal cavity during the surgery.

On March 3, 2015, Acord filed this medical malpractice action against the seven healthcare providers named as defendants. While this action was pending before the district court, Acord filed a motion to amend his petition to add a claim for punitive damages against Dr. Porter and Dr. Resch. The district court held a hearing on the motion to amend to add a punitive damage claim and denied it on the record. Subsequently, the district court filed a written order journalizing that the motion had been denied "per [the] record." Regrettably, the transcript from the hearing is not included in the record on appeal.

Later, both Dr. Porter and Dr. Resch filed motions for partial summary judgment. In his motion, Dr. Porter sought judgment as a matter of law on Acord's lack of informed consent and failure to supervise claims. Similarly, in his motion for partial summary judgment, Dr. Resch sought judgment as a matter of law on Acord's lack of informed consent claim. In his responses to the motions for partial summary judgment, Acord argued that there were genuine issues of material fact that would prevent the granting of judgment as a matter of law to either Dr. Porter or Dr. Resch. However, Acord's responses failed to comply with the requirements of Kansas Supreme Court Rule 141 (2020 Kan. S. Ct. R. 205) by failing to specifically cite to the record on several occasions.

On April 28, 2017, the district court held a hearing on the motions for partial summary judgment. At the end of the hearing, the district court granted the parties leave to submit additional briefing in support of their respective positions. Subsequently, on September 14, 2017, the district court granted Dr. Porter partial summary judgment on Acord's informed consent and failure to supervise claims. In addition, the district court granted Dr. Resch partial summary judgment on Acord's informed consent claim.

A few weeks later, Acord filed a motion to reconsider the district court's ruling on his informed consent claims against both Dr. Porter and Dr. Resch. Because the district judge who had ruled on the partial motions for summary judgment had retired, another district judge was assigned to the case and ultimately denied the motion to reconsider. In denying the motion to reconsider, the district court found—among other things—that Acord did not provide any expert testimony to establish "that Plaintiff was at any greater risk of injury because Dr. Resch participated in the surgery."

On January 11, 2018, the district court convened a 14-day jury trial. During the course of the trial, the parties presented the testimony of numerous witnesses and a large number of exhibits were admitted into evidence. After Acord rested his case-in-chief, the district court granted Dr. Resch's motion for judgment as a matter of law on a claim that he had not adequately prepared for the surgery. After the dismissal of this claim, the district court submitted the following claims against Dr. Porter and Dr. Resch to the jury:

- failure to discover or note the perforation to the bowel when it occurred;
- failure to repair the perforation to the bowel; and
- failure to adequately inspect or supervise the inspection of the bowel prior to the completion of the surgery to identify any hole or injury to the bowel.

The district court also submitted the following additional claims to the jury regarding the care provided by Dr. Resch to Acord after the surgery:

- failure to rule out a bowel injury immediately following the surgery;
- failure to exercise a high degree of suspicion for bowel perforation and appropriately treat the injury; and
- failure to timely recommend exploratory laparotomy to discover and repair the perforation.

11

After deliberation, the jury returned a verdict finding no fault on the part of Dr. Porter, Dr. Resch, or any of the other five health care providers named as defendants. Following the jury trial, Acord filed another motion to reconsider in an attempt to resurrect his claim of lack of informed consent against Dr. Porter and Dr. Resch. The district court again denied Acord's request for reconsideration of the informed consent issue. Thereafter, Acord filed a timely notice of appeal.

ANALYSIS

*Issues Presented*

On appeal, Acord presents five issues for our review. First, he argues that the district court erred in granting partial summary judgment in favor of Dr. Porter and Dr. Resch on his lack of informed consent claims. Second, he contends that the district court erred in granting partial summary judgment in favor of Dr. Porter on his failure to supervise claim. Third, he asserts that the district court erred at trial in excluding certain evidence at trial after the entry of an order in limine prior to the commencement of the jury trial. Fourth, he maintains that the district court erred at trial in instructing the jury regarding the appropriate standard of care. Finally, he claims the district court erred in denying his motion to amend his petition to add a claim for punitive damages.

*Summary Judgment Standards*

The standard for granting summary judgment—whether completely or partially—is governed by K.S.A. 2019 Supp. 60-256. "A party against whom relief is sought may move, with or without supporting affidavits or supporting declarations . . . for summary judgment on all or part of the claim." K.S.A. 2019 Supp. 60-256(b). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations pursuant to K.S.A. 53-601 . . . or as otherwise

provided in this section, set out specific facts showing a genuine issue for trial." K.S.A. 2019 Supp. 60-256(e)(2).

The Kansas Supreme Court has explained the rules relating to summary judgment as follows:

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

On appeal, we review the district court's ruling on a motion for summary judgment de novo. In doing so, we view the facts offered in support and opposition to the motion in the light most favorable to the party opposing summary judgment. *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1311, 429 P.3d 212 (2018).

Although the party opposing summary judgment need not prove its case, it does have an "affirmative duty to come forward with facts to support its claim." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 520, 856 P.2d 1313 (1993). An issue of fact is not genuine or material in ruling on a summary judgment motion unless it has legal controlling force as to the claims or defenses at issue in the motion. In other words, if a disputed fact could not affect the outcome of the case, it does not present a genuine issue of material fact for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013).

Furthermore, summary judgment requires strict adherence to the statutory requirements set forth in K.S.A. 2019 Supp. 60-256. In addition, Kansas Supreme Court Rule 141(a)(1) requires a party moving for summary judgment to set out, in separately numbered paragraphs, the uncontroverted facts that support its motion for summary judgment. For each fact, the moving party must include "precise references to pages, lines and/or paragraphs—or to a time frame if an electronic recording—of the portion of the record on which the movant relies." Rule 141(a)(2) (2020 Kan. S. Ct. R. 205). Likewise, the party opposing summary judgment is required to respond to the movant's statements of uncontroverted facts by submitting a list, corresponding in number to the statements of fact submitted by the movant, stating whether each of the movant's factual contentions are (a) uncontroverted, (b) uncontroverted for the purposes of the motion only, or (c) controverted. Rule 141(b)(1).

If an opposing party claims that a fact is controverted, it must "concisely summarize the conflicting testimony or evidence and . . . any additional genuine issues of material fact that preclude summary judgment; and provide precise references" to the record. Rule 141(b)(1)(C)(i) and (ii) (2020 Kan. S. Ct. R. 206). The district court—like this court—is required only to consider the parts of the record that have been cited by the parties in compliance with Rule 141. Nevertheless, in the court's discretion, other materials in the record may be—but are not required to be—considered. Rule 141(e).

Here, the district court granted partial summary judgment to Dr. Porter and Dr. Resch on Acord's implied consent claims. In addition, the district court granted partial summary judgment to Dr. Porter on Acord's failure to supervise claim. In doing so, the district court found that the material facts set forth by the movants were uncontroverted and that Acord's additional statements of fact did not raise genuine issues of material fact that would preclude partial summary judgment.

A review of the record reveals that although Acord attempted to controvert some of the movants' statements of uncontroverted fact, he did not comply with the requirements of Kansas Supreme Court Rule 141. Like the district court, we find that Acord failed to provide precise references to the record as required by Rule 141(a)(2). Instead, in Acord's responses to the motions for partial summary judgment, his counsel repeatedly cited to generic medical records without specific citations and without attaching the portions of the medical record on which he was relying on in his responses.

Although Acord refers to his own affidavit in his responses to the motions for partial summary judgment, it was not provided to the district court as an attachment. However, the affidavit is included in the record on appeal as an attachment to Acord's motion to amend to add a punitive damages claim. Even so, we find nothing in the affidavit to establish a genuine issue of material fact that would have prevented the district court from granting partial summary judgment in favor of Dr. Porter and Dr. Resch on the claims of lack of informed consent or failure to supervise.

We conclude that the district court did not err in adopting the movants' statements of uncontroverted fact. We find that the statements of uncontroverted fact submitted by Dr. Porter and Dr. Resch in their motions for partial summary judgment were appropriately supported by citations to the record. Furthermore, we conclude that the district court did not err in determining that Acord's additional statements of fact were not material to the issues presented in the motions for partial summary judgment.

*Informed Consent Doctrine*

In this medical malpractice action, Acord contends that the district court erred in granting Dr. Porter and Dr. Resch partial summary judgment on his lack of informed consent claims. To establish medical malpractice, a plaintiff must prove: (1) the health care provider owed a duty of care to the patient; (2) the health care provider breached that

15

duty or deviated from the appropriate standard of care; (3) the patient was injured; and (4) the injury was proximately caused by the health care provider's breach of the appropriate standard of care. *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495 (2018). One of the duties which a health care provider owes to his or her patient is to disclose the information that is necessary to allow the patient—in the absence of an emergency—to give his or her consent to the proposed treatment. This is commonly known as the doctrine of informed consent. *Rojas v. Barker*, 40 Kan. App. 2d 758, 761-62, 195 P.3d 785 (2008).

In Kansas, the Kansas Supreme Court first recognized the informed consent doctrine in *Natanson v. Kline*, 186 Kan. 393, 350 P.2d 1093 (1960) (*Natanson I*). A claim of lack of informed consent is a type of medical malpractice claim. See *Kelly v. VinZant*, 287 Kan. 509, 519, 197 P.3d 803 (2008). Similarly, a claim for breach of contract or fraud arising out of the rendering of care and treatment by a health care provider is a type of medical malpractice claim. In fact, "a plaintiff cannot bring a claim for breach of contract or fraud where the gravamen of the claim is medical malpractice." See 287 Kan. at 516-17.

In *Natanson I*, the Kansas Supreme Court held,

"Where no immediate emergency exists, a physician violates his duty to his patient and subjects himself to liability for malpractice, . . . if he makes no disclosure of significant facts within his knowledge which are necessary to form the basis of an intelligent consent by the patient to proposed . . . treatment." *Natanson I*, 186 Kan. 393, Syl. ¶ 4.

Our Supreme Court further explained in *Natanson I*:

"[The informed consent doctrine] in effect compels disclosure by the physician in order to assure that an informed consent of the patient is obtained. The duty of the physician to

16

disclose, however, is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances. How the physician may best discharge his obligation to the patient in this difficult situation involves primarily a question of medical judgment." *Natanson I*, 186 Kan. at 409.

In *Rojas*, a panel of this court found that the doctrine of informed consent requires health care providers "to provide sufficient information to their patients to permit patients to make intelligent, informed decisions about medical treatment." 40 Kan. App. 2d 761-62. The *Rojas* court explained that "[t]he rationale underlying the doctrine of informed consent is that while a patient may seek the guidance of medical professionals, the ultimate decision of whether to proceed with a particular course of treatment, or to decline treatment, belongs solely to the patient. [Citation omitted.]" 40 Kan. App. 2d at 762. Nevertheless, the duty to disclose information under the informed consent doctrine ""is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances."" 40 Kan. App. 2d at 763 (quoting *Funke v. Feldman*, 212 Kan. 524, 532, 512 P.2d 539 (1973) [quoting *Tatro v. Lueken*, 212 Kan. 606, Syl. ¶ 3, 512 P.2d 529 (1973)]).

Whether a patient would have refused the treatment or medical procedure had the physician made an adequate disclosure is an objective determination. To establish the essential element of causation, a plaintiff must come forward with evidence that a patient could reasonably be expected to decline the medical procedure had the patient been informed of the kind of risk or danger which resulted in the harm. Even though a patient's subjective testimony regarding whether he or she would have consented to the medical procedure may be considered, it is not controlling because it is tied to hindsight and may or may not be reasonable. *Funke*, 212 Kan. at 537.

In Kansas, a plaintiff in a medical malpractice action not only bears the burden of proving that a health care provider breached the appropriate standard of care but also that the breach caused the injury or damage claimed. *Burnette v. Eubanks*, 308 Kan. 838, Syl.

17

¶ 1, 425 P.3d 343 (2018). "Except where the lack of reasonable care or the existence of proximate cause is apparent to the average [layperson] from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988). In medical malpractice actions, the opinions rendered by expert witnesses should be limited to matters which are within a reasonable degree of probability and should not include mere possibilities. *Sharples v. Roberts*, 249 Kan. 286, 292, 816 P.2d 390 (1991); *Stormont-Vail Healthcare, Inc. v. Cutrer*, 39 Kan. App. 2d 1, Syl. ¶ 4, 178 P.3d 35 (2007).

The rules relating to the opinions of expert witnesses apply to medical malpractice actions based on a patient's claim of lack of informed consent. See *Natanson v. Kline* (*Natanson II*), 187 Kan. 186, 190, 354 P.2d 670 (1960). In *Funke*, the Kansas Supreme Court found that nonfulfillment of a physician's obligation to disclose certain information to a patient is not sufficient—in and of itself—to establish liability. 212 Kan. at 535. "If adequate disclosure could reasonably be expected to have caused the patient to decline the treatment or procedure because of revelation of the kind of risk or danger which resulted in her harm, causation is shown but otherwise not." 212 Kan. at 537. In reaching its holding, our Supreme Court reasoned that "[o]ccurrence of the risk must be harmful to the patient, for negligence unrelated to injury is nonactionable. And, as in malpractice actions generally, there must be a causal relationship between the physician's failure to adequately divulge the risks and damage to the patient." 212 Kan. at 535.

We find that the *Natanson I*, *Natanson II*, *Funke*, and *Rojas* opinions continue to stand for the proposition "that a plaintiff proves causation in an informed consent case by showing (1) an objectively reasonable patient would have declined treatment had the patient been advised of a material risk or danger; (2) the patient was not advised of a material risk or danger; and (3) that risk or danger materialized, resulting in harm to the patient." *Rojas*, 40 Kan. App. 2d at 766. Otherwise, the failure to disclose is without legal

18

consequence. Accordingly, to prevail on a lack of informed consent claim, a plaintiff must show a causal connection—usually established by expert testimony offered within a reasonable degree of medical probability—between a health care provider's failure to adequately disclose material information and the harm suffered by the patient.

In the present case, the district court found that there is no evidence in the record to support a finding that Dr. Resch's involvement in the surgery placed Acord at greater risk of injury than he would have otherwise been. In particular, the district court found that "[b]ecause there is no expert testimony . . . that having Dr. Resch perform the surgery created any additional risk to [Acord], the failure to disclose the level of Dr. Resch's involvement is not actionable." Based on our review of the record on appeal, we agree with the district court.

We find that Acord failed to come forward with expert testimony within a reasonable degree of medical probability that having Dr. Resch—who was at the time a fifth-year resident nearing the completion of his residency—participate or take the lead in performing the surgery under the supervision of Dr. Porter caused an injury that he otherwise would not have suffered. In this regard, it is important to reiterate that the parties do not dispute the fact that a bowel perforation is an unfortunate—but recognized—complication of laparoscopic ventral hernia surgical repair. In fact, Acord does not dispute that Dr. Porter disclosed the risk of a bowel perforation to him in advance of the surgery.

We also agree with the district court that Acord failed to come forward with expert testimony within a reasonable degree of medical probability to establish that either Dr. Porter or Dr. Resch breached their duty to disclose information that a reasonable medical practitioner would disclose under the same or similar circumstances. See *Rojas*, 40 Kan. App. 2d at 763. Instead, the record on appeal includes a "Conditions of Admission" form and a "Consent for Surgical or Other Procedure" form—both of which were signed by

19

Acord. Although he asserts that he did not read these documents before signing them, we find that by signing the admission form and consent for surgery Acord knew or should have known that Wesley Medical Center is a teaching institution and that medical students as well as other health care providers might participate in his care and treatment as part of their training. We also find that the information disclosed in these documents was sufficient to allow Acord to make an intelligent decision—and to ask questions if he had concerns—regarding whether or not to go forward with the surgery.

Further, we do not find that the issue of whether Dr. Resch's participation in the surgery increased the risk or danger to Acord to be a subject that falls within the common knowledge exception. In particular, it is not reasonable to believe that a layperson would be familiar with the risks inherent in laparoscopic ventral hernia repair surgery nor would they know how those risks might be increased—if at all—because a fifth-year surgical resident participated in the operation. Consequently, expert testimony within a reasonable degree of medical probability was necessary to establish these matters.

Although one of Acord's expert witnesses generally questioned whether residents should be performing this type of surgery, the expert did not render an opinion that Dr. Resch's participation in or performance of Acord's surgery increased his risks of bowel perforation. Likewise, the expert witness did not render an opinion that Dr. Resch lacked the training and experience to perform a laparoscopic ventral hernia repair procedure under the supervision of a board-certified surgeon. This is also a matter that would require expert testimony because it does not fall within the common knowledge of a lay person to know what types of surgical procedures that a fifth-year surgical resident is qualified to perform.

Hence, we conclude that Acord has failed to come forward with sufficient evidence to establish that either Dr. Porter or Dr. Resch breached their duty to disclose information a reasonable surgeon would have disclosed under the same or similar

circumstances. We also conclude that Acord has failed to come forward with sufficient evidence to establish that an objectively reasonable patient would have declined to undergo surgery had he or she been advised that a fifth-year surgical resident would be participating in or performing the majority of the procedure under Dr. Porter's supervision. Furthermore, even if Acord had come forward with sufficient evidence to establish a breach of duty on the part of Dr. Porter or Dr. Resch, we conclude that he has also failed to come forward with expert testimony to establish a causal connection between the undisclosed risk or danger and the injury or damage actually suffered.

*Strict Liability for Nondisclosure*

In the alternative, Acord contends that Dr. Porter and Dr. Resch should be held strictly liable for lack of informed consent. As such, Acord argues that no expert testimony is required to prove these claims. Specifically, Acord alleges that Dr. Porter and Dr. Resch should be held strictly liable because his surgery was performed by a surgeon other than the surgeon that he had retained. In response, Dr. Porter and Dr. Resch contend that they used a team approach during Acord's surgery in which they both participated in the performance of the procedure as well as in the inspection of the bowel prior to completing the surgery.

In support of his position, Acord cites several cases from other jurisdictions. For example, he cites the case of *Perna v. Pirozzi*, 92 N.J. 446, 457 A.2d 431 (1983). In *Perna*, the plaintiff underwent a urological surgical procedure. He later discovered that the surgery was performed by a surgeon other than the one he had retained. Significantly, unlike the present case, the surgeon that the patient had retained was not present during the procedure. On appeal, the New Jersey Supreme Court found that when a patient retains a specific surgeon to perform a procedure, the patient has the right to expect that the surgeon he or she retains—and not another—will perform the operation. 92 N.J. at

464-65. In contrast, it is undisputed that both Dr. Porter and Dr. Resch were in the operating room during Acord's surgery in the present case.

Acord also cites to a concurring opinion in *Buie v. Reynolds*, 571 P.2d 1230 (Okla. Civ. App. 1977). In *Buie*, it was "undisputed that during the hour-long surgery [the surgeon retained to perform the surgery] left the operating room on at least two different occasions for coffee." 571 P.2d at 1232. Although the majority simply remanded the case to the district court to allow the plaintiff to submit circumstantial evidence that he was injured during the surgery, one of the judges on the panel filed a concurrence in which he suggested that this was a case of "fraud and deceit and breach of contract" in which the doctrine of res ipsa loquitur should be applied. 571 P.2d at 1236 (Brightmire, J., concurring). Here, there is no evidence that Dr. Porter left the operating room or failed to participate in Acord's surgery with Dr. Resch.

Another case cited by Acord is *Howard v. University of Medicine and Dentistry of New Jersey*, 172 N.J. 537, 800 A.2d 73 (2002). To begin, we note that *Howard* involved an appeal from a lower court's order denying the plaintiff's motion to amend. In contrast, Acord is appealing from an order granting partial summary judgment to Dr. Porter and Dr. Resch. This difference is significant because the New Jersey Supreme Court was simply addressing whether the plaintiff had included sufficient allegations to state a claim for relief. At that early stage of the proceedings—unlike in a response to a summary judgment motion—the plaintiff in *Howard* had no obligation to come forward with evidence to support the essential elements of his claim.

In addition, the facts of *Howard* are subtantially different from this case. In *Howard*, the plaintiff suffered injuries during back surgery. As a result, the patient filed a lawsuit in which he alleged that the surgeon failed to inform him of a recognized complication of this type of surgical procedure. The plaintiff also alleged that the surgeon was negligent in the actual performance of the surgery. In addition, the plaintiff alleged

22

that the surgeon misrepresented his credentials and experience in performing back surgeries even after being questioned by the patient. Of course, in the present case, Acord does not dispute that he was informed that perforation of the bowel is a recognized complication of surgery, and he does not claim that the surgeons misrepresented their qualifications to him. Likewise, he does not allege that Dr. Resch's lack of exeprience led to the injuries suffered.

Although the New Jersey Supreme Court understandably allowed the plaintiff to amend his complaint to include a claim of lack of informed consent under the circumstances presented in *Howard*, it did not impose strict liability on the surgeon nor did it hold that expert testimony was unnecessary to establish a causal connection between the undisclosed risk or danger and the injury actually suffered. Rather, the court expressly recognized that in order to prevail on an informed consent claim "'there must be medical causation [from the procedure], that is, a causal connection between the undisclosed risk [of the procedure performed] and the injury ultimately sustained.'" *Howard*, 172 N.J. at 549 (quoting *Canesi v. Wilson*, 158 N.J. 490, 505, 730 A.2d 805 [1999]). As previously explained, these conclusions are consistent with Kansas law on the doctrine of informed consent.

Accordingly, we do not find the legal authorities from other jurisdictions to be particularly helpful in the resolution of the issues presented in this case. We do, however, find the opinion of this court in the case of *Wedel v. Woods*, No. 77,952, unpublished opinion filed February 5, 1999 (Kan. App.), to be noteworthy because it involved facts and legal issues similar to the present case. In *Wedel*, the patient was injured during surgery when a surgical resident at Wesley Medical Center inadvertently punctured her aorta during an operation. Like this case, the surgical resident was under the supervision of a board-certified surgeon who was present during the surgical procedure.

23

As in this case, the plaintiff in *Wedel* asserted a claim against a surgeon for allegedly failing to inform her that a resident would be participating in her operation. Also similar to this case, the patient signed an admission form which stated that she understood that Wesley Medical Center is a teaching institution in which residents participate in patient care under supervision. Although the patient did not deny signing the admission form, she claimed that the surgeon still had a duty to inform her that a surgical resident would be participating in her surgery. However, the district court granted summary judgment in favor of the surgeon on the patient's informed consent claim.

On appeal, a panel of this court affirmed the district court's decision to grant summary judgment to the surgeon on the patient's informed consent claim. In doing so, the panel in *Wedel* concluded that the patient had offered no legal authority to support her contention that the surgeon should have informed her that the specific resident would be participating in the surgery. Slip op. at 6. Significantly, the panel found that Wesley Medical Center's admission form was sufficient to constitute "informed consent for a resident to participate in her surgery." Slip op. at 7. Subsequently, on April 27, 1999, the Kansas Supreme Court denied a petition for review in *Wedel*, and a mandate was issued on April 29, 1999.

We note that Kansas courts are not alone in granting summary judgment in an informed consent case where an admission or consent form discloses the potential involvement of medical students or residents in the care and treatment of a patient. For example, in *Bowlin v. Duke University*, 108 N.C. App. 145, 423 S.E.2d 320, 321 (1992), a patient was referred to a surgeon for a bone marrow harvest procedure at Duke University Medical Center. Like Wesley Medical Center, Duke is a teaching hospital providing clinical training to medical students and residents. As a result, a fourth-year resident and a board-certified surgeon both participated in the bone marrow extraction.

24

Following the procedure, the patient experienced complications and filed a lawsuit against the supervising surgeon.

On appeal, the North Carolina Court of Appeals affirmed the granting of partial summary judgment in favor of the surgeon on the patient's claim of lack of informed consent. In doing so, the *Bowlin* court found that it is standard practice for teaching hospitals to utilize residents in the care and treatment of patients. The court further found that because the patient had signed a consent form stating that medical students may be involved in her care and treatment, the surgeon had no duty to inform her that the particular resident would be participating in her surgical procedure. 108 N.C. App. at 150; see *Tipton v. Isaacs*, 17 N.E.3d 292, 296-98 (Ind. Ct. App. 2014) (affirming summary judgment in favor of health care providers where a patient signed a consent form acknowledging that her surgical procedure was being performed in a teaching institution and that unnamed health care providers might be involved in her operation).

Although we find *Bowlin* to be consistent with Kansas law, it is unnecessary for us to look to cases from other jurisdictions or to secondary authorities to resolve this issue. This is because Acord's strict liability argument is contrary to well-settled Kansas law on the doctrine of informed consent. As discussed above, both the Kansas Supreme Court and this court have found a health care provider's failure to disclose material information to a patient is not actionable unless the patient can establish that the nondisclosure resulted in injury or damage. In *Funke*, our Supreme Court held:

> "No more than breach of any other legal duty does nonfulfillment of the physician's obligation to disclose alone establish liability to the patient. *An unrevealed risk that should have been made known must materialize, otherwise the omission, however unpardonable, is legally without consequence.* Occurrence of the risk must be harmful to the patient, for negligence unrelated to injury is nonactionable. And, *as in malpractice actions generally, there must be a causal relationship between the*

*physician's failure to adequately divulge the risks and damage to the patient*." (Emphases added.) 212 Kan. at 535.

See *Wecker v. Amend*, 22 Kan. App. 2d 498, 505, 918 P.2d 658 (1996).

Consequently, we conclude that a physician is not strictly liable for failing to disclose information to a patient that a reasonable physician would disclose. Rather, the plaintiff must show that the undisclosed risk or danger actually materialized, resulting in harm to the patient. Here, we find that Acord has failed to come forward with evidence to establish—by expert testimony or otherwise—a causal connection between the alleged failure of Dr. Porter or Dr. Resch to obtain his informed consent and his injuries. Thus, we conclude that the district court appropriately granted partial summary judgment as a matter of law on Acord's informed consent claims and also properly denied his motion to reconsider on this issue.

*Failure to Supervise Claim*

Next, Acord contends that the district court erred in granting partial summary judgment to Dr. Porter on the claim that he failed to supervise Dr. Resch. At the outset, we note that Acord fails to cite any legal authority in the section of his brief addressing this issue other than repeating the standard for summary judgment. Instead, Acord simply points to a statement made by one of his expert witnesses during deposition testimony and suggests that it was sufficient to defeat summary judgment on the failure to supervise claim. We disagree.

As discussed above, to establish medical malpractice, a plaintiff must prove: (1) the health care provider owed a duty of care to the patient; (2) the health care provider breached that duty or deviated from the appropriate standard of care; (3) the patient was injured; and (4) the injury was proximately caused by the health care provider's breach of

26

the appropriate standard of care. *Castleberry*, 308 Kan. at 802. Moreover, "[e]xcept where the lack of reasonable care or the existence of proximate cause is apparent to the average [layperson] from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Bacon*, 243 Kan. at 307.

Here, we find that Acord was required to come forward with expert testimony to establish the nature and extent of Dr. Porter's duty to supervise a fifth-year surgical resident. In addition, he was required to come forward with expert testimony to establish a breach of that duty. Furthermore, he was required to come forward with expert testimony to establish a causal connection between the alleged failure to supervise and the injury suffered.

The record shows that Acord filed his expert designation pursuant to K.S.A. 2019 Supp. 60-226(b)(6)(B). In his expert report, Dr. Arnold S. Seid candidly acknowledged that "[b]owel injury can occur even if a physician meets the standard of care." Although he opined that Dr. Porter and Dr. Resch should have discovered and repaired or noted the perforation during the surgery, Dr. Seid did not render any opinion —or even mention— that Dr. Porter deviated from the appropriate standard of care in his supervision of Dr. Resch.

During his deposition, Dr. Seid was asked if he would "agree that Dr. Porter was qualified to supervise Dr. Resch during this surgery?" In response, Dr. Seid answered:  "I have a lot of problems with that." However, immediately after making this vague statement about having "problems" with Dr. Porter's qualifications to supervise Dr. Resch, Dr. Seid conceded that he had expressed no such opinion in his expert report. Moreover, we note that Dr. Seid never submitted a supplemental expert report to offer an opinion on this issue.

A deposition of an expert witness is an opportunity for the parties to inquire about the opinions that are disclosed pursuant to K.S.A. 2019 Supp. 60-226(b)(6)(B). It is not an opportunity to offer new opinions that were not properly disclosed under the Kansas Rules of Civil Procedure. Even if we consider the vague comment made in his deposition about Dr. Porter's supervision of Dr. Resch, we note that Dr. Seid failed to articulate what "problems" he allegedly had with Dr. Porter's qualifications. We also note that Dr. Seid did not render an opinion that Dr. Porter actually failed to supervise Dr. Resch nor did he render an opinion to establish a causal connection between the alleged failure to supervise and Acord's injury. Thus, we conclude that the district court appropriately granted partial summary judgment to Dr. Porter on Acord's failure to supervise claim.

*Evidentiary Rulings at Trial*

Acord further contends that the district court erred in granting a pretrial motion in limine and excluding certain evidence at trial that he believes was material to the claims submitted to the jury as well as to the credibility of witnesses. We apply a similar review of a decision regarding a motion in limine to that of a decision regarding an evidentiary ruling. We must first determine the relevance of the challenged evidence, i.e., whether the evidence is probative and material. We review the district court's determination regarding whether evidence is probative for an abuse of discretion. However, our review of the district court's determination regarding whether evidence is material is unlimited. *Biglow v. Eidenberg*, 308 Kan. 873, 892, 424 P.3d 515 (2018).

If we find the evidence to be relevant, we then look to the rules of evidence or other legal principles to determine admissibility. Our review of the district court's application of evidentiary rules and legal principles depends upon whether the particular rule or principle permits the district court to exercise its discretion or whether it involves a question of law. Under certain circumstances, we may also consider whether the district

court abused its discretion in weighing the probative value of the evidence against the potential that it is unduly prejudicial. *Biglow*, 308 Kan. at 892.

Reversal of a jury's verdict is only required when the erroneous admission or exclusion of evidence "'is of such a nature as to affect the outcome of the trial and deny substantial justice.'" *State v. Engelhardt*, 280 Kan. 113, 130, 119 P.3d 1148 (2005). In other words, "[e]rror in the admission or exclusion of evidence does not warrant reversal unless 'there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."'" *Castleberry*, 308 Kan. at 812 (quoting *State v. McCullough*, 293 Kan. 970, 981-82, 270 P.3d 1142 [2012]). Hence, even if the district court committed error in making an evidentiary ruling, we must determine whether the evidence admitted had any likelihood of altering the outcome of the trial. *State v. Boggs*, 287 Kan. 298, 319, 197 P.3d 441 (2008); see also *State v. Garcia*, 282 Kan. 252, 270, 144 P.3d 684 (2006) (In making such a determination, each case must be analyzed in light of the record as a whole.).

Here, most of the evidence that Acord contends should have been admitted was excluded based on a pretrial order in limine issued by the district court. "Error predicated on evidence excluded by a pretrial motion in limine must be based on a proffer of the evidence in question during trial or on a motion for reconsideration." *Biglow*, 308 Kan. at 892 (citing *Brunett v. Albrecht*, 248 Kan. 634, 640, 810 P.2d 276 [1991]). As the Kansas Supreme Court found in *Biglow*, the failure of a party to make a proffer outside the presence of the jury at trial limits what can be challenged on appeal. 308 Kan. at 893.

Prior to the commencement of the jury trial, Dr. Porter and Dr. Resch requested orders in limine to exclude all questions, testimony, and references in front of the jury related to the informed consent claims on which they had been granted judgment as a matter of law. In addition, Dr. Porter requested an order in limine to exclude all questions, testimony, and references in front of the jury related to the failure to supervise

29

claim on which he had also been granted summary judgment as a matter of law. At a pretrial hearing, defense counsel reiterated their request that these claims "not be brought up in any fashion" and should not be mentioned in front of the jury. The district court agreed and granted the motions in limine. The district court also denied Acord's motion to reconsider the granting of partial summary judgment to Dr. Porter and Dr. Resch.

In his brief, Acord makes a conclusory argument suggesting that he was prevented from presenting "numerous and important facts and events that actually took place just before, during and after the surgery." Instead of pointing to the specific evidence he desired to present, he asserts that he was "effectively hamstrung" from presenting evidence "regarding substitution of surgeons, the failure to advise of such conduct, the degree of participation by each doctor, and a host of other matters."

Certainly, issues relating to "substitution of surgeons" and "the failure to advise of such conduct" relate to the informed consent and the failure to supervise claims on which Dr. Porter and Dr. Resch were granted partial summary judgment. As a result, they were covered by the district court's order in limine. Likewise, the topic of "degree of participation by each doctor" relates to Acord's failure to supervise claim that was also the subject of the district court's order in limine. Of course, we have no way of knowing what might be included in the "host of other matters" that Acord contends should have been admitted into evidence. If Acord believed that the district court erroneously applied the order in limine, he should have made a proffer of the evidence he desired to elicit outside the presence of the jury or in a motion to reconsider. By failing to do so, it is difficult—if not impossible—for us to review these evidentiary questions.

Additionally, Acord acknowledges that the district court allowed him to answer a question on direct examination regarding whether Dr. Porter had ever said anything to him to indicate that another surgeon might perform the majority of the laparoscopic ventral hernia repair surgery. However, after allowing this testimony, the district court

cautioned Acord's attorney not "to go any further" because this was "not a contention that is going to be presented to the jury." In light of the granting of the partial summary judgment on the claim of lack of informed consent—as well as the entry of the order in limine—we find the district court's cautionary warning to be appropriate because evidence regarding the consent obtained prior to the surgery was not material to or probative of the remaining claims submitted to the jury. Also, this cautionary warning during the early stages of the trial should have put Acord's counsel on notice of the need to proffer this type of evidence outside the presence of the jury if he believed it was admissible.

We also find that it was appropriate for the district court to sustain an objection when Acord's counsel asked his own expert, Dr. Seid, "[D]o you know what consent was obtained?" Clearly, this question related to the lack of informed consent claims that were no longer in the case. Again, because the district court had granted partial summary judgment to Dr. Porter and Dr. Resch on the informed consent claims—and had entered an order in limine to exclude references to this claim—questions regarding the consent obtained prior to the surgery were no longer material to or probative of the claims to be presented to the jury. Moreover, no proffer was made outside the presence of the jury to show why evidence regarding the consent obtained should have been admitted at trial.

Nevertheless, Acord suggests that his question to Dr. Seid was appropriate because it went to the credibility of Dr. Porter and Dr. Resch. Although we recognize that K.S.A. 60-420 allows a party to "examine *the witness* and introduce extrinsic evidence concerning *any conduct by him or her* and any other matter *relevant upon the issues of credibility*" (emphasis added), this question was asked of Acord's expert witness and was not directed to either Dr. Porter or Dr. Resch. Moreover, pursuant to K.S.A. 60-422(d), "evidence of specific instances of [a witness'] conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible." As a result, we do not find that the

31

district court erred in sustaining the objection to this question. Moreover, we note that no proffer was made to establish its relevancy or materiality.

We are also not persuaded by Acord's argument that the district court erred when it prevented him from asking Dr. Resch during cross-examination about what he did to prepare for the surgery. Once again, defense counsel objected, but Acord did not ask to proffer the evidence he desired to elicit outside the presence of the jury. As a result, there is nothing in the record to show how Dr. Resch's preparation for the surgery was material to or probative of the remaining claims to be presented to the jury. Additionally, our review of the record reveals that by the time Acord's counsel asked Dr. Resch about his preparation for the surgery, the district court had already entered a judgment as a matter of law at the close of the plaintiff's case-in-chief, striking the claim that Dr. Resch had not adequately prepared for surgery.

In this regard, it is important to recognize that Acord has not appealed from the district court's entry of a judgment as a matter of law on his claim relating to Dr. Resch's preparation for the surgery. Because the district court granted judgment as a matter of law on this claim and denied Acord's motion for leave to amend his petition to add a claim for punitive damages, the relevancy, materiality, and probative value of questions related to Dr. Resch's pre-surgical preparation was minimal at best. Additionally, allowing Acord to venture into this line of questioning would have likely diverted the jury's attention from focusing on the claims that remained in the case.

We find it to be significant that Acord did not call Dr. Resch as a witness in his case-in-chief. Although we respect this trial strategy, this decision limited the ability of Acord's counsel regarding the type of questions that he could ask Dr. Resch. In Kansas, the scope of cross-examination is subject to reasonable control by the district court and is usually limited in scope to the matters addressed during direct examination. See *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 501, 665 P.2d 757 (1983); see also *State v.*

*Wells*, 296 Kan. 65, 86, 290 P.3d 590 (2012) ("A district court's decision to limit cross-examination is reviewed under an abuse of discretion standard."). Here, a review of the trial transcript reveals that Dr. Resch was not asked about nor did he testify regarding his pre-surgical preparation on direct examination. Consequently, we find that it was reasonable—and not an abuse of discretion—for the district court to limit questions to those matters addressed on direct examination or that were material to the claims that remained in the case at that point in the trial.

By the time Dr. Resch was called as a witness at trial, the only remaining claims against him related to the failure to identify the bowel perforation, failure to take action to repair or note the perforation prior to the completion of surgery, and failure to identify the bowel perforation after the surgery. None of Acord's experts opined that Dr. Resch's pre-surgical preparation played a role in the alleged failure to identify the bowel perforation. Regardless, the record reveals that Acord's counsel was allowed to elicit some testimony from Dr. Resch on cross-examination regarding his preparation for Acord's surgery. However, the record also reflects that Acord's counsel did not attempt to follow-up on this testimony.

Similarly, we find that the district court did not err in preventing Acord's counsel from asking Dr. Resch, "Do you know how much of the surgery you performed?" The district court granted the objection asserted by defense counsel on the ground that the question had been asked and answered. A review of the record shows that both Dr. Porter and Dr. Resch had already testified that they could not remember who performed which parts of the surgery. Rather, the testimony reflected that they used a team approach and agreed that it was likely that Dr. Resch performed the majority of the surgery. As such, we do not find that the district court abused its discretion in excluding this cumulative evidence nor do we find the question of how much of the surgery each surgeon performed to be material to or probative of the claims submitted to the jury at trial.

33

Finally, even if there were some errors in the admission or exclusion of evidence over the course of the 14-day jury trial, we do not find a reasonable probability that they had an effect on the outcome of the trial or denied Acord substantial justice. As indicated above, the claims that were ultimately submitted to the jury involving these two doctors related to their failure to discover, note, and/or repair the bowel perforation sooner. Based on our review of the record on appeal, we do not find that Acord was prevented from presenting evidence relating to these remaining claims or from cross-examining Dr. Porter and Dr. Resch about them.

In summary, we do not find that the district court erred in ruling on evidentiary issues at trial. Rather, we find the district court's evidentiary rulings during this lengthy and complex trial to be consistent with Kansas law, with the order in limine, and with the remaining claims to be submitted to the jury. If anything, we find that the district court granted Acord's counsel leeway in asking questions of several witnesses about matters that primarily related to the claims on which Dr. Porter and Dr. Resch had already been granted judgment as a matter of law. Significantly, we find that Acord's failure to proffer the evidence he desired to elicit at trial in light of the order in limine substantially affects our ability to review his contentions regarding the reasonableness of the district court's evidentiary rulings. Accordingly, we conclude that the district court's evidentiary rulings did not infringe upon Acord's right to a fair trial.

*Standard of Care Instruction*

In addition, Acord contends that the district court committed reversible error by improperly instructing the jury regarding the standard of care. In particular, he argues that Instruction No. 9 did not adequately or correctly inform the jury as to the appropriate standard of care. In response, Dr. Porter and Dr. Resch assert that Instruction No. 9 was both legally and factually correct. They also point out that the instruction given by the

district court is a slightly modified version of PIK Civ. 4th 123.12 and that it is nearly identical to the original standard of care instruction requested by Acord.

Our standard of review when addressing challenges to jury instructions is based upon the following analysis:

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). [Citations omitted.]'" *Biglow*, 308 Kan. at 880-81.

In addressing an instructional error, we review the jury instructions as a whole to determine whether they fairly state the applicable law and whether they are misleading. We are not to focus on any single instruction. *Siruta v. Siruta*, 301 Kan. 757, 775, 348 P.3d 549 (2015). In reviewing this issue, it is also important to recognize that the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018).

In Kansas, there are two PIK instructions addressing the appropriate standard of care to be exercised by health care providers. First, PIK Civ. 4th 123.01 (Duty of Health Care Provider) sets forth the general standard of care applicable to all health care providers. Second, PIK Civ. 4th 123.12 (Duty of Medical Specialist) sets forth the standard of care applicable to medical specialists. Ultimately, the district court gave the jurors Instruction No. 9, which is a slightly modified version of PIK Civ. 4th 123.12.

Instruction No. 9 states:

>    "A radiologist or surgeon who holds himself/herself out to be a specialist in a
> particular field of medicine has a duty to use his/her skill and knowledge as a specialist in
> a manner consistent with the special degree of skill and knowledge ordinarily possessed
> by other specialists in the same field of expertise at the time of the diagnosis or treatment.
> All of the defendants in this case hold themselves out to be specialists. A violation of this
> duty is negligence."

We note that the primary difference between the language of Instruction No. 9 and the language of PIK Civ. 4th 123.12 is the additional statement that "[a]ll of the defendants in this case hold themselves out to be specialists." We also note that Acord does not argue that this modification was inappropriate. Instead, he argues that the district court should have given a different standard of care instruction to the jury. However, it is unclear from the record on appeal whether Acord wanted the district court to give his requested standard of care instruction in addition to—or in place of—Instruction No. 9. Regardless, we reach the same conclusion either way.

Acord requested the following instruction:

>    "If a physician elects to proceed with the diagnosis, care and treatment of his
> patient in a field beyond his expertise, he is held to the standard of care requisite to that
> specialty with which he is dealing. Under such circumstances, it is no excuse to suggest
> that the physician's own expertise is limited and that he is not responsible."

In his brief, Acord fails to cite to any authority in support of this proposed instruction. However, in requesting the instruction, Acord indicated that this language came from the comments to PIK 123.12. The comments provide: "A physician who is not a specialist, and yet proceeds with diagnosis, care, and treatment in a specialist's field is held to the standard of care of the specialty with which he or she is dealing." See PIK 4th 123.12 (citing *Aves ex rel. Aves v. Shah*, 997 F.2d 762, 765 [10th Cir. 1993]). Despite

36

Acord's argument to the contrary, we find that this comment actually supports the district court's decision to give Instruction No. 9 to the jury because it held all of the defendants—including Dr. Resch—to the standard of care of a medical specialist.

We find that Instruction No. 9 sufficiently explained to the jury the appropriate standard of care to be exercised by both Dr. Porter and Dr. Resch. The instruction as given held each of the defendants in this case to the higher standard of care of a medical specialist. In particular, the instruction as given advised the jurors that Dr. Resch should be treated as a specialist in surgery even though he was still a fifth-year surgical resident. The instruction also advised the jurors that—as a specialist—Dr. Resch was required to act "in a manner consistent with the special degree of skill and knowledge ordinarily possessed by other specialists in the same field of expertise." As a result, we do not find that the district court erred in giving Instruction No. 9 to the jury and we do not find that any other standard of care instruction was required.

When viewed as a whole, we find that the jury instructions given by the district court fairly stated the applicable law and did not mislead the jury. Specifically, the district court's instructions properly informed the jury regarding the elements of the claims asserted against the defendants; regarding the standard of care to be exercised by each of the defendants; and regarding Acord's burden of proof. Consequently, we conclude that the district court did not err in instructing the jury regarding the standard of care.

*Motion to Add Punitive Damages Claim*

Acord's final contention is that the district court erred in denying his pretrial motion to amend his petition to add a claim for punitive damages. Punitive damages are intended to punish a defendant for "malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the

37

commission of similar wrongs." *Ceretti v. Flint Hills Rural Elec. Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992). "Punitive damages are awarded on the theory that the defendant deserves punishment for his or her wrongful acts." *Adamson v. Bicknell*, 295 Kan. 879, 888, 287 P.3d 274 (2012).

Under K.S.A. 60-3703, the district court may allow the filing of an amended petition claiming punitive damages only when a plaintiff has established there is a probability that the plaintiff will prevail on the claim as set forth in K.S.A. 2019 Supp. 60-209. See *Fusaro v. First Family Mortgage Corp., Inc.*, 257 Kan. 794, 801, 897 P.2d 123 (1995). In addition, K.S.A. 60-3702(c) provides that in order to establish a claim for punitive damages, a plaintiff must prove his or her claim by "clear and convincing evidence . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." Clear and convincing evidence is evidence which shows that the truth of the facts asserted is highly probable. *Becker v. Knoll*, 301 Kan. 274, 276, 343 P.3d 69 (2015) (clear and convincing evidence is equivalent to clear and satisfactory evidence and shows truth of asserted facts is highly probable).

We review the district court's decision on a motion to amend a petition to add a claim for punitive damages under an abuse of discretion standard. *McElhaney v. Thomas*, 307 Kan. 45, 57, 405 P.3d 1214 (2017). Here, the district court held a hearing on Acord's motion to amend to add a claim for punitive damages against Dr. Porter and Dr. Resch. As indicated above, the record reflects that the motion was denied at the conclusion of the hearing. After ruling, the district court entered a minute order indicating that the motion was "DENIED PER RECORD." However, the transcript from the hearing is not part of the record on appeal.

The party asserting that the district court erred—in this case Acord—has the burden to designate a record sufficient to allow for appellate review. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Because he has failed

38

to provide us with a transcript of the hearing at which the district court announced its ruling on the motion to amend to add a claim for punitive damages, we presume that the district court's action was valid and that it made the necessary findings to support its decision when there is no objection to insufficient findings of fact and conclusions of law. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012). Thus, we conclude that Acord has failed to provide an adequate record to establish that the district court abused its discretion in denying the motion to amend the petition to add a claim for punitive damages.

Further, even if Acord had come forward with an adequate record to allow for appellate review of the punitive damage issue, we find that he has failed to come forward with sufficient evidence to establish that Dr. Porter or Dr. Resch acted willfully, wantonly, or maliciously. Because Acord was unable to establish the essential elements necessary to defeat partial summary judgment on his lack of informed consent claims, we find that the district court's denial of Acord's motion to amend punitive damages was appropriate. See *Moore v. State Bank of Burden*, 240 Kan. 382, Syl. ¶ 7, 729 P.2d 1205 (1986). Thus, under the circumstances presented, we conclude that the district court did not abuse its discretion in denying Acord's motion to amend to add a claim for punitive damages.

CONCLUSION

This is a complex medical malpractice case in which many difficult issues were presented to the district court both prior to and during the trial. Although the perforation of Acord's bowel and the serious complications he has suffered are truly unfortunate, it is undisputed that this type of injury does not—in and of itself—constitute medical malpractice. As such, the district court was required to exercise discernment in applying Kansas law to the uncontroverted facts to determine those claims that should be

39

submitted to the jury as well as those claims upon which judgment should be granted as a matter of law.

Based on our review of the record, we do not find that the district court erred in granting partial summary judgment to Dr. Porter and Dr. Resch on Acord's lack of informed consent claims. Likewise, we do not find that the district court erred in granting partial summary judgment to Dr. Porter on Acord's failure to supervise claim. In addition, we do not find that the district court abused its discretion in denying Acord's motion to amend to include a punitive damages claim. We also find that the district court appropriately allowed Acord's claims relating to the delay in discovering and repairing the bowel perforation to the jury.

For two weeks, the jurors patiently considered the testimony presented, reviewed the exhibits admitted into evidence, and listened to the arguments of experienced counsel. Throughout the trial, the district court skillfully ruled on evidentiary issues and properly instructed the jury on the law. In the end, Acord was unable to prove his case to the satisfaction of a jury of his peers. Although the trial may not have been perfect, we conclude that it was fair to the parties.

Affirmed.